UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DRAKE S. JONES, | NO. CIV. 2:09-1025 WBS DAD |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT |
| COUNTY OF SACRAMENTO; JOHN MCGINNESS, individually and in his official capacity as Sheriff of the Sacramento County Sheriff's Department; Sacramento County Main Jail Commander ERIC MANESS; Sacramento County Sheriff's Department Chief of Correctional and Court Services JAMIE LEWIS; Sacramento Sheriff's Department Sergeant DANIEL MORRISSEY (Badge #182); Sacramento Sheriff's Department Deputy JUSTIN CHAUSSEE (Badge #276); Sacramento Sheriff's Department Deputy KEN BECKER (Badge #931); Sacramento Sheriff's Department Deputy CHRISTOPHER MROZINSKI (Badge #945); and Sacramento Sheriff's Department Deputy CHRIS CONRAD (Badge #1202), | |
| Defendants. | |

1

----oo0oo----

Plaintiff filed this civil rights action under 42 U.S.C. § 1983 after he was allegedly mistreated during his brief detention at the Sacramento County main jail ("main jail"). Defendants John McGinness, the Sheriff of Sacramento County, Erik Maness, a Captain and the jail commander of the main jail, and Jamie Lewis, a Chief Deputy with the Correctional and Court Security Services for Sacramento County ("supervisor defendants") now move for summary judgment with respect to plaintiff's claims against them.

I.   Factual and Procedural Background[1]

On August 5, 2008, plaintiff was helping a friend move and, after getting into a dispute with a third party, was arrested and taken to the main jail. (First Am. Compl. ("FAC") ¶ 18.) After being booked, plaintiff was placed in the sobering cell, which is a cell used to house arrestees that are or are believed to be under the influence of alcohol or a controlled substance. (Id. ¶ 21; Jones Dep. 156:12-16; Pl.'s Opp'n Ex. 6.) The parties dispute whether the officers were justified in placing plaintiff in the sobering cell. While plaintiff was in the sobering cell, the drain in the cell began to back up and overflow with liquid, which plaintiff alleges was raw sewage containing human waste. (FAC ¶ 21.) Plaintiff attempted to notify officers of the overflowing substance by tapping on the

---

[1] The court recognizes that the parties maintain significant disputes about what occurred during plaintiff's detention on August 5, 2008. To rule on the pending motion for summary judgment, the court neither needs nor attempts to resolve any of the parties' disputes about what occurred that day.

2

cell windows, pointing down, and possibly describing what was happening. (Id. ¶ 22; Jones Dep. 157:3-158:15.)

When officers became aware of the overflowing substance, it was already leaking from under the cell door into the hallway. (FAC ¶ 23.) Defendants Sacramento County Sheriff's Department Sergeant Daniel Morrissey and Sacramento County Sheriff's Department Deputies Justin Chaussee, Ken Becker, Christopher Mrozinski, and Chris Conrad ("officer defendants") entered the sobering cell and ultimately removed plaintiff. (Id. ¶¶ 25, 30.) The parties dispute the amount of force the officer defendants used and whether plaintiff resisted when they attempted to remove him, but agree that plaintiff was ultimately forced to lay face down on the wet floor of the sobering cell. (Id. ¶¶ 26-27.) When they entered the cell to remove plaintiff, the officer defendants believed plaintiff had caused the cell drain to back-up and overflow, although it was later determined that plaintiff was not responsible for the problems with the drain. (Id. ¶ 25; Pl.'s Opp'n Ex. 32 at 2.) Plaintiff further alleges that, while he was laying face down, one of the officer defendants attempted to kick the raw sewage at his face and into his mouth. (FAC ¶¶ 28-29.)

After plaintiff was removed from the sobering cell, he was placed in a safety/segregation cell. (Id. ¶ 31; Pl.'s Opp'n Ex. 26.) The parties dispute whether plaintiff should have been placed in the safety/segregation cell, and plaintiff further alleges that the officer defendants did not allow him to clean the liquid substance off of him and failed to adhere to the monitoring requirements for an arrestee placed in a

safety/segregation cell.  (FAC ¶ 35.)

        Plaintiff was released from custody after a total of eight hours and criminal charges were never filed against him. Based on the mistreatment he allegedly received, plaintiff filed a written citizen's complaint with the Sacramento County Police Department on September 12, 2008.  (Id. ¶¶ 35-37.)  The Professional Standards Bureau of the department subsequently conducted an investigation of plaintiff's complaint.

        Lieutenant Milo Fitch, who is in charge of the Professional Standards Bureau, initially reviewed plaintiff's complaint and, shortly after reviewing it, contacted Undersheriff Tom McMahon to show him the video footage from plaintiff's detention.  (Fitch Dep. 25:10-13, 33:5-9, 16-18.)  Lieutenant Fitch met with Undersheriff McMahon and Sheriff McGinness and reviewed the videos.  (Id. at 25:4-21.)  After watching the tapes, Sheriff McGinness testified that he was relieved that the video from the sobering cell "'does not represent what [he] had been told was depicted on the video.'"  (McGinness Dep. 6:4-11.)

        The Professional Standards Bureau completed its factual investigation of plaintiff's complaint, which was led by Sergeant Mitchell Andrews.  Sergeant Andrews determined that, if plaintiff's allegations were true, the officer defendants' behavior was a violation of the jail's General Order on Use of Force and Discourteous Treatment of the Public.  (Pl.'s Opp'n Ex. 32 at 1.)  The Professional Standards Bureau's investigation materials, which included its factual findings and the videos, were then sent to the supervisor defendants for a determination as to whether the officer defendants engaged in wrongdoing and

4

whether any action would be taken.

On January 22, 2009, Captain Maness, who has served as the commander of the main jail since July 2008 (Maness Decl. ¶ 2), issued his Findings and Recommendations after reviewing the Professional Standards Bureau's investigation. In his Findings and Recommendations, Captain Maness concluded that plaintiff's allegations of misconduct were "unfounded" and recommended that "[n]o further action" be taken. (Pl.'s Opp'n Ex. 32 at 2-3.) Specifically, after recounting the factual statements by plaintiff and the officer defendants, Captain Maness stated:

> After reviewing the Main Jail video, it is impossible to definitively determine if Jones tensed up and became resistive; although, it does *appear* that he did. While Deputies Conrad and Chaussee are escorting Jones toward the cell door, it appears that Deputy Chaussee is knocked off balance, causing him to slightly stumble to his left. Presumably, this occurred because Jones became resistive. Immediately afterward, Deputies Conrad and Chaussee took Jones to the ground, with the assistance of Deputies Becker and Mrozinski.
>
> The officers did not slam Jones into the floor, nor do I believe that they intentionally placed him face down in sewage water. They felt a need to have greater control over their suspect, and took appropriate measures, regardless of their surroundings. In fact, in taking Jones to the ground, the officers placed themselves in direct contact with the same sewage water that Jones complained about.
>
> While the video clearly shows that Jones *did not* flood the cell, the officers were acting, in good faith, on information they believed to be true at the time [i.e., that he did flood the cell]. . . .
>
> [With respect to the allegation that an officer making a kicking movement to splash sewage in plaintiff's face, a] review of the Main Jail video corroborates Deputy Chausee's account of the incident. You can clearly see that Jones' elbow is starting to bend, and it appears Deputy Chaussee is simply re-positioning his left knee to hold Jones' elbow in place. Any matter that was splashed into Jones' face and/or mouth would have been unintentional, and there is no evidence to suggest otherwise.

(Id. at 2-3.)

Captain Maness's Findings and Recommendations were then sent to Chief Deputy Lewis, who has served as the Chief Deputy of Correctional and Court Security Services since late 2007. (Lewis Decl. ¶ 2.) Chief Deputy Lewis conducted an independent review of plaintiff's complaint, which included reviewing Captain Maness's Findings and Recommendations and the Professional Standards Bureau investigation. (Lewis Dep. 21:5-16.) In a three-page memorandum dated January 26, 2009, Chief Deputy Lewis described his review of the video tapes, explained why he disagreed with Sergeant Andrews, and concluded that he agreed with Captain Maness's determination that the allegations were unfounded:

> In reading the investigator's case summary, I find several examples in which he presents his interpretation of the facts with under[-]written conclusions. If forced to rely on the information in this summary, one would conclude that there was serious misconduct, worthy of significant sanction. However, Captain Maness presents his findings and recommendations as a critical, objective review of the case . . . .

(Pl.'s Opp'n Ex. 34 at 3.) Based on his review, Chief Deputy Lewis also expressed criticism to Undersheriff McMahon about some of the conclusions and factual determinations Sergeant Andrews had drawn in his investigation, complaining that Sergeant Andrews was "drawing conclusions when his role is to be a fact finder." (Lewis Dep. 21:21-22:6, 23:19-22, 24:21-25:17.)

Sheriff McGinness, who has served as the Sheriff of Sacramento County since July 2006 (McGinness Decl. ¶ 2), completed the final review of plaintiff's complaint. (McGinness Decl. Ex. A.) In a letter addressed to plaintiff on March 9,

2009, Sheriff McGinness stated, "After review of the completed investigation it has been determined there has been no misconduct" and that the allegations of officer misconduct were unfounded. (Id.)

Plaintiff's expert, Daniel Vasquez, who has over thirty-six years of corrections experience, including serving as a correctional officer, counselor, parole agent, special agent investigator, classification and parole representative, program administrator, associate warden, chief deputy warden, and warden, reviewed the supervisor defendants' handling of plaintiff's complaint. (Pl.'s Opp'n Ex. 29 ¶ 1.) In Vasquez's opinion, the only reasonable conclusion to draw about the officer defendants' conduct was that they treated plaintiff as he alleges in order to punish him and carry out "Street Justice." (Id. ¶¶ 7-9.) Vasquez further opined that the supervisor defendants should have sustained plaintiff's complaint and punished the officer defendants. (Id. ¶ 15.)

Vasquez also noted that four complaints had been filed against the officer defendants in the past five years, and, in all four instances, the complaints were deemed unfounded or the officer was exonerated. (Id. ¶ 16.) Vasquez ultimately concluded that, "given the importance of investigation of complaints and appropriate discipline, and given the handling of this case, it is my opinion that defendants McGinness, Lewis, and Maness created the permissible environment which encouraged and caused the subordinate deputies' conduct." (Id. ¶ 22.)

Plaintiff initiated this § 1983 civil rights action against the County of Sacramento, the supervisor defendants, and

7

the officer defendants on April 14, 2009.  The supervisor defendants now move for summary judgment with respect to plaintiff's fifth claim for failure to train, sixth claim for failure to supervise, and ninth claim for negligence.  Plaintiff does not oppose entry of summary judgment in favor of the supervisor defendants on his claims for failure to train and negligence, and the court will accordingly enter judgment in favor of the supervisor defendants on those claims.

II.   Discussion

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also id. R. 56(a) ("A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim.").  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial.

1  Id.

2          Once the moving party meets its initial burden, the
3  non-moving party "may not rely merely on allegations or denials
4  in its own pleading," but must go beyond the pleadings and, "by
5  affidavits or as otherwise provided in [Rule 56,] set out
6  specific facts showing a genuine issue for trial."  Fed. R. Civ.
7  P. 56(e); Celotex Corp., 477 U.S. at 324; Valandingham v.
8  Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).  In its inquiry,
9  the court must view any inferences drawn from the underlying
10 facts in the light most favorable to the nonmoving party, but may
11 not engage in credibility determinations or weigh the evidence.
12 Anderson, 477 U.S. at 255; Matsushita Elec. Indus. Co., Ltd. v.
13 Zenith Radio Corp., 475 U.S. 574, 587 (1986).

14          In relevant part, § 1983 provides,

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . , subjects,
> or causes to be subjected, any citizen of the United States .
> . . to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in
> equity or other proper proceeding for redress . . . .

19 While § 1983 is not itself a source of substantive rights, it
20 provides a cause of action against any person who, under color of
21 state law, deprives an individual of federal constitutional
22 rights or limited federal statutory rights.  42 U.S.C. § 1983;
23 Graham v. Connor, 490 U.S. 386, 393-94 (1989).

24          As § 1983 provides for liability for any person who
25 "causes" a citizen to be subjected to a constitutional violation,
26 personal participation is not always required and "[t]he
27 requisite causal connection can be established . . . by setting
28 in motion a series of acts by others which the actor knows or

reasonably should know would cause others to inflict the constitutional injury." Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978); accord Gilbrook v. City of Westminster, 177 F.3d 839, 854 (9th Cir. 1999). The Ninth Circuit has held that a supervisor who did not participate in the unconstitutional conduct can be liable under § 1983 "for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiesce[nce] in the constitutional deprivations of which [the] complaint is made; or for conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal quotation marks and citations omitted) (alterations in original).

At the same time, however, vicarious liability is inapplicable to § 1983 actions and thus "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1948 (2009). Based on the inapplicability of respondeat superior to § 1983, the Supreme Court recently indicated in Iqbal that the term "supervisory liability" in the context of § 1983 actions is a "misnomer." Id. at 1949. In Iqbal, the Court rejected the argument that supervisors could be liable for unconstitutional discrimination based on the supervisors' "'knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees.'" Id. The Court held that, when a supervisor does not directly participate in the constitutional violation, that supervisor

10

cannot be liable under § 1983 unless the plaintiff shows that the supervisor, through his "own individual actions, has violated the Constitution." <u>Id.</u> at 1949.

In his dissent in <u>Iqbal</u>, Justice Souter, joined by Justices Stevens, Ginsburg, and Breyer, criticized the majority for eliminating the possibility of a supervisor's liability under a theory other than <u>respondeat superior</u>, such as a supervisor's "actual knowledge of a subordinate's constitutional violation and acquiesce[nce]." <u>Id.</u> at 1957-58 (Souter, J., dissenting).[2] In light of <u>Iqbal</u>, it is therefore questionable whether the Ninth Circuit's line of cases holding a supervisor liable for his acquiescence in a constitutional deprivation is still good law.[3]

---

[2] Justice Souter's strongest criticism of the majority's decision about supervisor liability lies in the fact that defendants conceded that "a supervisor's knowledge of a subordinate's unconstitutional conduct and deliberate indifference to that conduct are grounds for <u>Bivens</u> liability." <u>Id.</u> at 1957 (Souter, J., dissenting). Justice Souter argued that the majority should have accepted this concession and withheld addressing the scope of supervisor liability, especially given the absence of briefing from the parties. <u>Id.</u> at 1957-58.

[3] In <u>Simmons v. Navajo County</u>, No. 08-15522, --- F.3d ----, 2010 WL 2509181 (9th Cir. June 23, 2010), the plaintiffs argued that the supervisors were liable for the failure to train or supervise the subordinate officers. In a brief discussion omitting reference to its prior cases addressing supervisors' liability, the Ninth Circuit cited <u>Iqbal</u> and stated, "To survive summary judgment, [plaintiffs] must therefore adduce evidence that [the supervisors] themselves acted or failed to act unconstitutionally, not merely that a subordinate did." <u>Id.</u> at *7.
On the other hand, in another post-<u>Iqbal</u> decision, the Ninth Circuit cited the avenues for supervisor liability from <u>Larez</u> and stated, "Any one of these bases will suffice to establish the personal involvement of the defendant in the constitutional violation." <u>al-Kidd v. Ashcroft</u>, 580 F.3d 949, 965 (9th Cir. 2009). <u>But see id.</u> at 992, 992 n.13 ("The majority concludes Ashcroft may be held liable in [plaintiff's] <u>Bivens</u> action for his 'knowing failure to act' . . . . It is doubtful that the majority's 'knowing failure to act' standard survived

11

See, e.g., Arocho v. Nafziger, No. 09-1095, 2010 WL 681679, at *10 (10th Cir. Mar. 1, 2010) (stating that Iqbal "casts doubt on the continuing vitality" of the Tenth Circuit's "standard for supervisory liability," which "'requires allegations of personal direction or of actual knowledge and acquiescence' in a subordinate's unconstitutional conduct"); accord Bayer v. Monroe County Children & Youth Servs., 577 F.3d 186, 190 n.5 (3d Cir. 2009); Maldonado v. Fontanes, 568 F.3d 263, 274 n.7 (1st Cir. 2009).

In this case, it is undisputed that the supervisor defendants did not participate in and were not present for the events plaintiff alleges occurred during his detention on August 5, 2008. (McGinness Decl. ¶¶ 4-5, Maness Decl. ¶¶ 4-5, Lewis Decl. ¶¶ 4-5.) The only evidence of the supervisor defendants'

---

Iqbal.") (Bea, J., dissenting); id. at 976 n.25 ("The dissent points to the fact that the Court held [in Iqbal] that Ashcroft could not be held liable for his 'knowledge and acquiescence' of his subordinates' unconstitutional discrimination against Muslim men. We need not address whether the two standards are distinct, or whether the Court's comments relate solely to discrimination claims which have an intent element, because [plaintiff] plausibly pleads 'purpose' rather than just 'knowledge' to impose liability on Ashcroft."). In a dissent from a denial of a rehearing en banc of al-Kidd, Justice O'Scannlain, joined by seven other justices, criticized the majority in al-Kidd for permitting the plaintiff "to seek damages from Ashcroft for his subordinates' alleged misconduct, a result indisputably at odds with Iqbal." Al-Kidd v. Ashcroft, 598 F.3d 1129, 1141 (9th Cir. 2010) (O'Scannlain, J., dissenting).

Recently, after oral argument in a case on June 8, 2010, the Ninth Circuit ordered supplemental briefing "addressing what effect, if any, the Supreme Court's decision in Iqbal . . . had on this court's prior holdings that proof of an official's knowledge of unconstitutional conduct combined with his acquiescence in that conduct is sufficient to make a claim for supervisory liability in the official's individual capacity." Starr v. County of Los Angeles, No. 09-55233, Docket Entry No. 38 (June 10, 2010). The Ninth Circuit has yet to issue an opinion in that case.

involvement with the officer defendants' alleged mistreatment of plaintiff occurred when each supervisor defendant discussed or reviewed the incident after plaintiff filed his citizen's complaint. (McGinness Decl. ¶¶ 6-8, Maness Decl. ¶¶ 6-8, Lewis Decl. ¶¶ 6-8.) Relying on the Ninth Circuit's line of cases holding a supervisor liable for his acquiescence in a violation, plaintiff thus claims that material issues of fact remain with respect to whether the supervisor defendants' acquiescence in and formal ratification of the officer defendants' conduct created an environment that encouraged and caused the officer defendants' misconduct.

Assuming that the Ninth Circuit's acquiescence line of cases still presents a viable theory after Iqbal, the cases are nonetheless distinguishable from the case at hand. The leading case in which the Ninth Circuit held that a supervisor's "acquiesce[nce] in the constitutional deprivations" could sufficiently establish the casual link to hold the supervisor liable under § 1983 was Larez, 946 F.2d 630. Similar to the case at hand, the supervisor from the Los Angeles Police Department ("LAPD") in Larez reviewed the internal investigation of the plaintiff's citizen complaint and "ratified" the officers' use of force when he indicated that none of plaintiff's allegations would be sustained. Id. at 646. Also similar to this case, the plaintiff in Larez presented testimony from an expert in police department procedures who testified that "he would have disciplined the individual officers and would have established new procedures for averting the reoccurrence of similar excesses in the future." Id. Unlike this case, however, the expert in

13

Larez also presented evidence of a two-year study he had conducted of LAPD complaints, which lead him to conclude that it was "'almost impossible for a police officer to suffer discipline as a result of a complaint lodged by a citizen' noting that it was as if 'something has to be done on film for the department to buy the citizen's story.'" Id. at 647.[4]

The Ninth Circuit subsequently relied on Larez to uphold a district court's denial of qualified immunity at the summary judgment stage for a supervisor who had "signed the internal affairs report dismissing [plaintiff's citizen] complaint." Watkins v. City of Oakland, 145 F.3d 1087, 1093-94 (9th Cir. 1997). In holding that a reasonable jury could find the supervisor liable under § 1983, the court emphasized that the supervisor dismissed the plaintiff's complaint despite evidence of the officer's "use of excessive force contained in the report and evidence of [the officer's] involvement in other police dog bite incidents, and apparently without ascertaining whether the circumstances of those cases required some ameliorative action to avoid or reduce serious injuries to individuals from dogs biting them." Id. at 1093 (emphasis added). Unlike the evidence

---

[4] The Ninth Circuit discussed the two-year study when analyzing the claim against the same supervisor defendant in his official capacity based on the LAPD's alleged policy or custom of allowing and thereby causing the use of excessive force. As the Ninth Circuit's subsequent discussion of Larez shows, the two-year study, which established that the environment of rejecting citizens' complaints caused officers to believe that the use of excessive force against plaintiff would be permitted, was nonetheless relevant to its upholding of the jury verdict against the supervisor in his individual capacity. See Blankenhorn v. City of Orange, 485 F.3d 463, 485-86 (9th Cir. 2007) (relying on the two-year study to explain why the Larez court upheld the jury verdict against the supervisor).

presently before the court, the evidence in Watkins was thus not limited to the supervisor's approval of the conduct after it occurred, but also included prior incidents that were approved without taking efforts to reduce the chances that the same officer would engage in similar misconduct in the future.

The Ninth Circuit again found that a genuine issue of material fact existed with respect to a supervisor's liability in Blankenhorn v. City of Orange, 485 F.3d 463 (9th Cir. 2007). In that case, while the supervisor did not appear to have reviewed an internal investigation, the plaintiff submitted evidence that the supervisor had approved the officer's prior "personnel evaluations despite three complaints of excessive force having been lodged against [that officer]." Id. at 485. The plaintiff also submitted expert testimony from "a former sergeant and lieutenant with twenty-seven years of experience" who opined that "the Department's discipline of [the officer] in all three matters was insufficient." Id. After discussing Larez and Watkins, the court concluded that the evidence the plaintiff presented "could lead a rational factfinder to conclude that [the supervisor] knowingly condoned and ratified actions by [the officer] that he reasonably should have known would cause constitutional injuries like the ones [the plaintiff] may have suffered." Id. at 486.

Together, Larez, Watkins, and Blankenhorn show that the Ninth Circuit has found a supervisor's conduct sufficient to establish the requisite causal link only when the supervisor engaged in at least some type of conduct before the unconstitutional incident and the supervisor knew or should have

known that his conduct could cause the constitutional violation the plaintiff suffered.  Cf. Phillips v. City of Fairfield, 406 F. Supp. 2d 1101, 1116 (E.D. Cal. 2005).  More importantly, Larez, Watkins, and Blankenhorn all preceded Iqbal, which rejected the theory of liability relying solely on a supervisor's knowledge of and acquiescence in the unconstitutional conduct. See Iqbal, 129 S.Ct. at 1949.  Requiring sufficient pre-incident conduct by a supervisor that can fairly be said to be a cause of the constitutional deprivation is thus the only way for Larez, Watkins, and Blankenhorn to have any precedential value after Iqbal.

Consequently, a supervisor's isolated and subsequent ratification of an officer's conduct--even in light of expert testimony suggesting that the supervisor should have sustained the citizen complaint--can never be sufficient to show that the supervisor caused the officer's conduct.  In fact, after Iqbal, it is questionable whether a supervisor's subsequent acquiescence in an officer's misconduct would even be relevant in determining whether a supervisor is liable under § 1983.

Here, the only evidence of pre-incident conduct plaintiff submitted is alluded to in his expert's affidavit, in which the expert states:

> All four of the other complaints for use of excessive force in the past five years against the subordinate officers directly involved in this incident were designated "Unfounded" or "Exonerated."  These probabilities stretch the limits of credibility . . . .

(Pl.'s Opp'n Ex. 29 ¶ 16.)  The expert's mere reference to four complaints in the five-year-period prior to the August 5, 2008 incident omits numerous material facts.  For example, it is

16

1  unclear which of the five officer defendants the four complaints
2  were made against and when the complaints were made.  More
3  importantly, plaintiff has not produced any evidence even
4  suggesting that one or more of the supervisor defendants had any
5  involvement with the prior complaints.  In fact, none of the
6  supervisor defendants had been serving in their current
7  supervisory positions for the five years prior to the August 5,
8  2008 incident, with McGinness becoming Sheriff in July 2006,
9  Lewis becoming a Chief Deputy in late 2008, and Maness becoming
10 the commander of the main jail only one month prior to the
11 incident.  Plaintiff also fails to submit any evidence about the
12 allegations in the prior complaints, of alleged insufficient
13 reviews performed by the supervisors, or of remedial action that
14 should have been taken.  The minimal evidence before the court is
15 therefore insufficient to give rise to the inference that the
16 supervisor defendants were involved in the four prior complaints
17 or that, if they were, they knew or should have known that their
18 conduct would cause the defendant officers to violate plaintiff's
19 rights.
20         Viewing the evidence in the light most favorable to
21 plaintiff, the only conduct by the supervisor defendants from
22 which a jury could find the supervisor defendants liable is that
23 they mishandled plaintiff's complaint and should have sustained
24 his allegations and taken remedial action against the officer
25 defendants.  While this evidence may be relevant to show that the
26 supervisor defendants' conduct caused those officers to believe
27 that their mistreatment of plaintiff was acceptable and thereby
28 caused them to engage in similar misconduct at a later date, it

is not sufficient to show that it caused the officer defendants' to mistreat plaintiff on August 5, 2008.  Put simply, the supervisor defendants' conduct after the alleged unconstitutional incident cannot be said to have caused that incident.

Accordingly, plaintiff has not submitted sufficient evidence to establish a triable issue as to whether the supervisor defendants engaged in conduct <u>prior to</u> the officer defendants' alleged mistreatment of plaintiff that the supervisor defendants knew or should have known would cause the officer defendants to violate plaintiff's rights.  The court must therefore grant the supervisor defendants' motion for summary judgment with respect to plaintiff's claim for failure to supervise.

IT IS THEREFORE ORDERED that defendants McGinness, Maness, and Lewis's motion for summary judgment on all claims asserted against them be, and the same hereby is, GRANTED.

DATED:  July 19, 2010

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE