1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DRAKE JONES,

11              Plaintiff,                    No. CIV S-09-1025 DAD

12        v.

13   COUNTY OF SACRAMENTO,              ORDER
     et al.,
14

15              Defendants.

16   _____/

17          This matter came before the court on May 20, 2011, for hearing of defendants'

18   motion and renewal of motion for judgment as a matter of law ("JMOL") pursuant to Federal

19   Rule of Civil Procedure 50(b).  (Doc. No. 167-1).  The parties have previously consented to

20   Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c).  (Doc. No. 96-98.)[1]  Attorneys

21   Stewart Katz and Guy Danilowitz appeared on behalf of plaintiff Drake Jones.  Attorneys John

22   Lavra and Amanda Butts appeared on behalf of defendants Daniel Morrissey, Justin Chaussee,

23   Ken Becker, Christopher Mrozinski and Chris Conrad.  Oral argument was heard and defendants'

24   _____

25          [1]  The case was originally assigned to U.S. District Judge William B. Shubb, who
     presided over the case through the issuance of the Final Pretrial Order.  On October 27, 2010,
26   with the consent of the parties, the matter was referred to the undersigned for all purposes.

                                            1

1  motion was taken under submission.  For the reasons set forth below, defendants' renewed

2  motion for judgment as a matter of law will be denied.

3                                                     BACKGROUND

4          On February 3, 2010, plaintiff filed an amended complaint in which he alleged,

5  pursuant to 42 U.S.C. § 1983, that the defendant deputies unreasonably seized him and used

6  excessive force against him in violation of his rights under the Fourth Amendment to the U.S.

7  Constitution and that defendant Morrissey failed to properly supervise the other defendants in

8  their use of force against plaintiff.

9          Plaintiff's version of the events, which he presented at trial, was in summary as

10 follows.  On August 5, 2008, he was helping a friend move and got into a verbal dispute with the

11 landlord of the property, resulting in plaintiff's arrest.  Plaintiff was booked into the Sacramento

12 County Main Jail and was placed into a so-called sobering cell, although there was no indication

13 that he was under the influence of either alcohol or drugs.  Shortly after being placed in the

14 sobering cell plaintiff observed raw sewage containing feces and urine coming out of a drain on

15 the floor of the cell.  Plaintiff attempted to alert jail staff about the situation by banging on the

16 window and pointing at the drain.  In an attempt to distance himself from the sewage, plaintiff

17 curled up on a bench/ledge in the sobering cell.  Shortly thereafter, deputies Morrissey, Chaussee,

18 Becker, Mrozinski and Conrad entered the cell.  Incorrectly believing that plaintiff was

19 responsible for the flooding of the cell, the deputies grabbed plaintiff, twisted his arms and took

20 him to the ground and into the raw sewage.  The deputies used their feet and knees and forced

21 plaintiff's face and body into the sewage on the cell floor.  The deputies then handcuffed

22 plaintiff, bound his feet, and forcibly moved him into a so-called safety cell.  On arrival at the

23 safety cell[2], the defendant deputies forced plaintiff onto the floor face down and told him not to

24 move.  The defendant deputies left plaintiff laying on his stomach on the floor of the safety cell,

25

26          [2]  The safety cell is an isolation cell at the Main Jail.  It has no toilet or sink but instead
   merely has a drain in the middle of the floor.

1    in sewage-soaked clothing and with his hands and feet bound with his pants pulled down around

2    his ankles for approximately two hours.  Thereafter, the defendant deputies returned to the safety

3    cell, got back on top of plaintiff, twisted his arms and asked if he had "had enough."  Plaintiff

4    cried out "yes," and the deputies removed plaintiff's handcuffs and shackles and left the cell.  An

5    hour later, plaintiff was moved to a third jail cell containing other prisoners and was eventually

6    released.  No criminal charges were ever brought against him stemming from this arrest.

7            Defendants denied plaintiff's allegations of wrongdoing on their part.  In

8    summary, they presented the following version of events at trial.  Defendant Deputy Becker

9    testified that he'd come in contact with plaintiff during the booking process and found his

10    behavior during that process to be somewhat uncooperative.  Because of that defendant Becker

11    decided plaintiff was either under the influence of alcohol or "coming off" of drugs and

12    designated him for placement in the sobriety cell, which was typically dirty.  According to

13    defendant Becker, when he returned to the sobriety cell area he saw water running out of the cell

14    and observed plaintiff banging on the cell window and yelling.  Based upon his observations of

15    plaintiff during the booking process, defendant Becker assumed that plaintiff had intentionally

16    plugged the toilet to flood the sobriety cell.[3]  He so informed his fellow defendant deputies, who

17    gathered with defendant Sgt. Morrissey and formed a plan to remove plaintiff from the sobriety

18    cell and move him to a safety cell.  Defendant deputies Chaussee, Becker, Mrozinski and Conrad,

19    in defendant Morrissey's presence and under his personal supervision, entered the sobriety cell

20    and placed their hands on plaintiff to remove him.  As the four deputies guided plaintiff toward

21    the cell door, according to the defendants, plaintiff stiffened and began pulling toward the left

22    thereby resisting.  The defendants took plaintiff to the wet floor of the cell face down only in

23    order to gain control and place him in restraints.   This took some time because plaintiff, while

24    not fighting,  was not completely cooperative and due to mechanical difficulties with the

25

26        [3]  The defense conceded that this was a mistaken belief on the part of the deputies.

1    handcuffs and restraints.   According to defendants, plaintiff was taken in shackles to the safety

2    cell because he had resisted the deputies.   Moreover, the shackles were removed approximately

3    an hour after plaintiff was placed in that isolation cell.   While they perhaps did not document

4    checking on plaintiff while in the safety cell as often as they were supposed to, according to

5    defendants, all the actions they took with respect to plaintiff were proper and in keeping with

6    their training and jail procedures.

7               Plaintiff proceeded to trial on the theory that the defendants had engaged in the

8    excessive use of force against him in violation of his Fourth Amendment right first, in forcing

9    him face down into the sewage on the floor of the sobriety cell and applying unnecessary

10   physical force against him there.   Second, plaintiff argues that the defendants had used excessive

11   force in placing him shackled in the safety cell, in his view, soaked in raw sewage and leaving

12   him there with his pants around his ankles for approximately two hours.   All of plaintiff's own

13   actions as well as his interactions with deputies inside the Sacramento County Main Jail, as well

14   as all of his time spent in the three cells, was captured on the jail surveillance camera.   The

15   parties placed those videotapes into evidence and both played and re-played them for the jury at

16   length.   The jury was exposed to the video footage in slow motion, in freeze frame and in every

17   other possible manner of presentation.   Witness after witness interpreted, from their own point of

18   view, what the video of each incident in fact depicted.   Thus, the dispute was clearly framed for

19   the jury: (1) did the defendants violate plaintiff's Fourth Amendment rights by subjecting him to

20   excessive force in the sobriety cell? (2) did the defendants violate plaintiff's Fourth Amendment

21   rights by subjecting him to excessive force in the safety cell? (3) did defendant Sgt. Morrissey

22   fail to properly supervise the deputies under his command in their use of force against plaintiff?

23              The jury trial in this action commenced on February 22, 2011.   At the conclusion

24   of the evidence, on March 3, 2011, counsel for defendants filed a motion for judgment as a

25   matter of law (JMOL).   (Doc. No. 147.)   Therein, defense counsel argued as follows:

26   /////

At trial, Plaintiff continually asserts two instances of excessive force by Defendants that allegedly violated Plaintiff's Fourth Amendment rights.  The first is restraining Plaintiff and taking him to the floor in the sobriety cell.  The second is the placement of Plaintiff in the safety cell while handcuffed and shackled and without the opportunity to wash off.  Even construed in the light most favorable to Plaintiff, the facts regarding the alleged second instance of force do not establish a violation of Plaintiff's Fourth Amendment rights to be free from excessive force.  In fact, the alleged second instance of force is not a claim of force at all, but a claim about the conditions of Plaintiff's confinement while at the jail.  Plaintiff should not be able to transmute what is truly a Fourteenth Amendment substantive due process or condition of confinement claim, or a state law intentional infliction of emotional distress claim, into a Fourth Amendment excessive force claim.  Further, Plaintiff is not entitled to damages for violation of his Fourth Amendment right to be free from the use of excessive force for actions that implicate no force at all.

The Fourth Amendment sets the applicable constitutional limitations for considering claims of excessive force during pretrial detention.  However, other claims brought by a detainee who has been neither charged nor convicted of a crime (e.g., claims of failure to provide care for serious medical needs, claims of abuse or unreasonable treatment during post-arrest interrogations, claims of failure to provide individuals in custody with basic human needs, etc.), are analyzed under the substantive due process clause of the Fourteenth Amendment.  To the extent Plaintiff claims that placement in the safety cell violated his constitutional rights, it does not constitute a violation of his right to be free from the use of excessive force, and therefore is outside the scope of claims in this case.  Additionally, to the extent Plaintiff claims that not having the ability (sic) wash violated his constitutional rights, it does not constitute a violation of his right to be free from the use of excessive force, and therefore is also outside the scope of claims in this case.

(Id. at 2-3) (internal citations omitted.)  Defense counsel also argued that JMOL should be granted because defendants were entitled to qualified immunity.  In this regard, defense counsel contended that plaintiff had failed to establish a violation of his constitutional rights and it was not clearly established at the time of the alleged incident that placing an individual in a safety cell handcuffed and shackled without the ability to wash himself constituted the use of excessive

/////

/////

5

1    force in violation of the Fourth Amendment such that a reasonable officer would have known his

2    actions were unlawful.[4]   (Id. at 6.)

3                    Following argument, defendants' JMOL motion was denied on March 4, 2011.

4    (Doc. No. 151.)  In so ruling, the court explained:

5               [T]hat the separate act of placing Mr. Jones in the safety cell
             following his removal from the sobriety cell was obviously, under
6             the evidence, arguably carried out through the use of non-trivial
             physical force.  That was certainly an element of the placement
7             there.

8             And drawing -- of course, the issue of whether force is excessive
             under the Fourth Amendment is judged under a reasonableness
9             standard as addressed by the Supreme Court in [Graham v. Connor,
             490 U.S. 386, 395 (1989).]
10
             However, in the Fourth Amendment context, claims of excessive
11            force do not necessarily require allegations of assault but rather can
             consist of the physical structure and conditions of the place of a
12            detention.  And that was the Sixth Circuit ruling in [Burchett v.
             Kiefer, 310 F.3d 937, 946 (6th Cir. 2002)], and cases cited therein.
13
             In Burchett, in particular, the Sixth Circuit agreed that the plaintiff
14            had stated a cognizable Fourth Amendment excessive use of force
             claim when he alleged that he was detained in a police car with the
15            windows rolled up in 90-degree heat for three hours.  That was
             deemed to be a cognizable excessive use of force by the Sixth
16            Circuit.

17            And Burchett, in turn, relied upon the decision of the United States
             Supreme Court in [Hope v. Pelzer, 536 U.S., 730, 738 (2002)].
18            Where the Supreme Court noted that where there was unnecessary
             exposure to heat of the sun, prolonged thirst, taunting, and a
19            deprivation of bathroom breaks could violate the Eighth
             Amendment's prohibition on unnecessary and wanton infliction of
20            pain.

21            The Court in Burchett said such actions a fortiori violate the Fourth
             Amendment which requires a showing of objective
22            unreasonableness rather than any particular subjective motivation.
             And there are other district court cases that have reached similar
23            conclusions.

24    ────────────────────

25         [4]  The motion for judgment as a matter of law was the first time counsel for defendants
      had raised any of these arguments.  Notably, defendants did not file a motion to dismiss and did
      not raise any of these arguments in their May 21, 2010 motion for summary judgment.  (Doc. No.
26    68.)

The point being that if conduct would be violative of the Eighth Amendment, the Fourth Amendment is even a lesser standard to some extent.  And that conduct that would be violative of the Eighth Amendment would most certainly be violative of the excessive force prohibition under the Fourth Amendment for non-convicted individuals.

\*\*\*

But based upon the authorities I've cited, I do think that a cognizable Fourth Amendment claim is stated based upon plaintiff's placement in the safety cell for the length of time that he was placed there, under the conditions that he claims he was placed there under.

And based upon the evidence that's been submitted in light of that interpretation of Fourth Amendment law and what the Fourth Amendment prohibition on excessive use of force would prohibit, I find that based upon the evidence submitted at trial, that a reasonable jury could conclude and find in plaintiff's favor as to that claim.

And based upon <u>Graham</u> and more particularly <u>Hope</u> that was relied upon by the court in <u>Graham</u>, I find that that principle of law has been well-established far before 2008 when this event allegedly occurred.  That it would be a violation of the Constitution to subject someone to the safety cell under the conditions that Mr. Jones alleges occurred here.  That that principle of law was well recognized, and that any reasonable officer would know that if the facts as presented by Mr. Jones were accepted as true by the jury, that their conduct would be deemed to be unlawful.

And therefore for that reason, I deny the Rule 50 motion on qualified immunity grounds as well.  So the motion will be denied at this time.

(Mar. 4, 2011 Hearing Transcripts (Doc. No. 181) at 4-7.)

The jury was instructed and began its deliberations on March 7, 2011.  (Doc. No. 152.)  On March 9, 2011, the jury return its verdict.  (Doc. Nos. 161-162.)  The jury did not find by a preponderance of the evidence that any of the defendants used excessive force in restraining plaintiff and taking him to the floor of the sobering cell.  (Doc. No. 162 at 2.)  However, the jury did find by a preponderance of the evidence that all of the defendants used excessive force in violation of the Fourth Amendment in placing plaintiff in the safety cell under the circumstances as they found them to be.  (<u>Id.</u>)  The jury also found by a preponderance of the evidence that

7

1    Defendant Morrissey violated plaintiff's Fourth Amendment rights by failing to supervise the

2    other defendants. (Id. at 3.) The jury awarded plaintiff a total of $31,000.00 in damages split

3    among the five defendants. (Id. ) Moreover, the jury found by a preponderance of the evidence

4    that in violating plaintiff's rights under the Fourth Amendment, each of the five defendants acted

5    maliciously, oppressively or in reckless disregard for plaintiff's constitutional rights. (Id.)

6    Despite this finding, the jury elected not to award plaintiff punitive damages against any of the

7    defendants. (Id. at 4.)

8        Defendants filed the renewed motion for judgment as a matter of law now pending

9    before the court on April 4, 2011. (Defs.' Ren. Mot. for JMOL (Doc. No. 167-1).) Plaintiff filed

10    an opposition on May 6, 2011, (Pl.'s Opp.'n. to Defs.' Ren. Mot. For JMOL (Doc. No. 183)), and

11    defendants filed a reply on May 13, 2011. (Defs.' Reply (Doc. No. 184).)

12                  STANDARD

13        Federal Rule of Civil Procedure 50(a)(1) states: "If a party has been fully heard on

14    an issue during a jury trial and the court finds that a reasonable jury would not have a legally

15    sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue

16    against the party; and (B) grant a motion for judgment as a matter of law against the party on a

17    claim or defense that, under the controlling law, can be maintained or defeated only with a

18    favorable finding on that issue." Federal Rule of Civil Procedure 50(b) governs renewed motions

19    for judgment as a matter of law made under Rule 50(a) and provides that the court may: "(1)

20    allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the

21    entry of judgment as a matter of law." "Because it is a renewed motion, a proper post-verdict

22    Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion."

23    E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009).

24        In rendering its decision on a Rule 50 motion, the court views the evidence in the

25    light most favorable to the non-moving party and draws all reasonable inferences in favor of the

26    non-moving party. Lakeside-Scott v. Multnomah County, 556 F.3d 797, 802 (9th Cir. 2009),

1   cert. denied, ___U.S.___, 130 S. Ct. 2089 (2010); Josephs v. Pacific Bell, 443 F.3d 1050, 1062

2   (9th Cir. 2006); City Solutions, Inc. v. Clear Channel Communications, Inc., 365 F.3d 835, 839

3   (9th Cir. 2004).  "A district court can set aside a jury verdict and grant JMOL only if, under

4   governing law, there can be but one reasonable conclusion as to the verdict and only if there is no

5   legally sufficient basis for a reasonable jury to find for that party on that issue."  Jules Jordan

6   Video, Inc. v. 144942 Canada Inc., 617 F.3d 1146, 1155 (9th Cir. 2010) (internal citation and

7   quotation omitted).  See also Josephs, 443 F.3d at 1062 ("The test applied is whether the

8   evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's

9   verdict."); Lakeside-Scott, 556 F.3d at 802 (quoting Ostad v. Oregon Health Scis. Univ., 327

10  F.3d 876, 881 (9th Cir. 2003)).

11                                              ANALYSIS

12          In the renewed motion for JMOL now pending before the court, counsel for

13  defendants reasserts the argument that the defendants cannot be held liable for violating

14  plaintiff's Fourth Amendment right to free from the use of excessive force for placing plaintiff in

15  the safety cell.  (Defs.' Ren. Mot. for JMOL (Doc. No. 167-1) at 3.)  Specifically, counsel argues

16  that plaintiff's claim is that he was left in the safety cell in wet, soiled clothing.  (Id. at 4.)

17  Defense counsel argues that plaintiff's claim arising from his time in the safety cell is not a

18  Fourth Amendment excessive force claim but instead a Fourteenth Amendment substantive due

19  process condition of confinement claim or a state law intentional infliction of emotional distress

20  claim.  (Id.)  According to the defendants, "as [p]laintiff's second alleged instance of force is not

21  actually force at all, it was unreasonable for the jury to find unconstitutional excessive force for

22  placement in the safety cell in the alleged condition."  (Id. at 8.)  Counsel also reasserts

23  defendants' argument with respect to qualified immunity.  (Id. at 8-11.)

24          A claim that a law enforcement officer used excessive force during the course of

25  an arrest is analyzed under the Fourth Amendment and an objective reasonableness standard.

26  Graham v. Connor, 490 U.S. 386, 395 (1989).  Under this standard, "'[t]he force which [i]s

                                                  9

applied must be balanced against the need for that force: it is the need for force which is at the heart of the Graham factors.'" Liston v. County of Riverside, 120 F.3d 965, 976 (9th Cir. 1997) (quoting Alexander v. City and County of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994)).  In addressing this legal standard, the Ninth Circuit recently reiterated:

> We must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.  Stated another way, we must balance the amount of force applied against the need for that force.

Bryan v. MacPherson, 630 F.3d 805, 823-24 (9th Cir. 2010) (internal quotations and citations omitted).  See also Scott v. Harris, 550 U.S. 372, 383-84 (2007); Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002); Deorle v. Rutherford, 272 F.3d 1272, 1280 (9th Cir. 2001); Liston, 120 F.3d at 976.

"The Supreme Court has deliberately left undecided the question of 'whether the Fourth Amendment continues to provide protection against deliberate use of excessive force beyond the point at which arrest ends and pretrial detention begins.'" Aldini v. Johnson, 609 F.3d 858, 864 (6th Cir. 2010) (quoting Graham, 490 U.S. at 395 n.10).  The Ninth Circuit, however, has held that the Fourth Amendment continues to afford protection to an "arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest." Pierce v. Multnomah County, Or., 76 F.3d 1032, 1043 (9th Cir. 1996).  See also Lolli v. County of Orange, 351 F.3d 410, 415-17 (9th Cir. 2003) (applying Fourth Amendment standards for excessive force claim brought by a pre-arraignment detainee); Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1197 (9th Cir. 2002) (applying Fourth Amendment standards to an excessive force claim involving a pre-arraignment detainee); Givens v. County of San Francisco, No. C 06-2505 MHP (pr), 2011 WL 1225584, *2 (N.D. Cal. Apr. 1, 2011) ("The Fourth Amendment reasonableness standard also applies to allegations of the use of excessive force against an arrestee and the conditions of confinement while detained in custody post-arrest but pre-arraignment.").

An arrestee's claim of excessive force does not "necessarily require allegations of assault, but rather can consist of the physical structure and conditions of the place of detention." Burchett v. Kiefer, 310 F.3d 937, 946 (6th Cir. 2002) (internal citation and quotation omitted). See also Baird v. Renbarger, 576 F.3d 340, 344 (7th Cir. 2009) ("Plaintiffs need not show physical injury in order to sustain an excessive force claim."); Robinson v. Solano County, 278 F.3d 1007, 1014-1015 (9th Cir. 2002) (en banc) (holding that pointing a gun at someone may constitute excessive force, even if it does not cause physical injury).  In this regard, "subjecting a prisoner to special confinement that causes him to suffer increased effects of environmental conditions . . . can constitute excessive force." Danley v. Allen, 540 F.3d 1298, 1308 (11th Cir. 2008), overruled in part on other grounds, Randall v. Scott, 610 F.3d 701 (11th Cir. 2010).  See also Hope v. Pelzer, 536 U.S. 730, 738 (2002) (holding that handcuffing inmate to hitching post, and thus causing "unnecessary exposure to the heat of the sun," violated clearly established rights under the Eighth Amendment)[5]; Howard v. Kansas City Police Dept., 570 F.3d 984, 989-90 (8th Cir. 2009) (holding that forcing shooting victim to lay on hot asphalt for seven to eight minutes resulting in second-degree burns constituted excessive force); Burchett, 310 F.3d at 945 (holding that a detainee's unnecessary detention in extreme temperatures violated the Fourth Amendment); Cornwell v. Dahlberg, 963 F.2d 912, 915 (6th Cir. 1992) (rejecting Fourth Amendment excessive force claim on the grounds that a convicted prisoner could bring only an Eighth Amendment excessive force claim, but recognizing that "detention on the cold, muddy ground" could constitute claim of excessive force).

In light of these authorities, the court finds defendants' renewed motion for JMOL unpersuasive.  Defendants' renewed arguments do not cause the court to question its previous

---

[5]  "When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002).  The standard applicable in Eighth Amendment excessive force claims "involves a more culpable mental state than that required for excessive force claims arising under the Fourth Amendment's unreasonable seizures restriction."  (Id.)

1    ruling that, based upon the evidence admitted at trial, a reasonable jury could find that defendants

2    violated plaintiff's Fourth Amendment rights by using excessive force in placing him in the

3    safety cell under these circumstances (handcuffed, shackled, with his pants around his ankles and

4    soaked in sewer water) for approximately two hours.  See Hope, 536 U.S. at 738; Baird, 576 F.3d

5    at 344; Danley, 540 F.3d at 1308; Howard, 570 F.3d at 989-90; Burchett, 310 F.3d at 945-46;

6    Robinson, 278 F.3d at 1014-15.  As noted above, claims of excessive use of force are not limited

7    to allegations of physical assault but instead include allegations concerning the physical

8    circumstances of a plaintiff's detention.

9            There is, however, an alternative basis upon which defendants' motion must be

10   denied.  In renewing their motion for judgment in their favor as a matter of law, defendants'

11   characterize plaintiff's Fourth Amendment claim with respect to his treatment in the safety cell

12   as concerning "actions that implicate no force at all."  (Defs.' Ren. Mot. for JMOL (Doc. No.

13   167-1) at 3.)  That characterization is inaccurate and clearly belied by the evidence presented at

14   the trial of this matter.  As noted above video recordings of the events involving plaintiff at the

15   jail on the day in question, including all two hours in the safety cell, were admitted into evidence

16   and played before the jury.  (See Doc. No. 73.)  Viewed in the light most favorable to plaintiff

17   that evidence depicted defendants in physically escorting plaintiff, who is fully compliant and

18   who has his hands cuffed behind his back and is shackled with his pants around his ankles, into

19   the safety cell.  The defendants then pushed plaintiff onto his knees and then onto his stomach,

20   face down in the safety cell.  As plaintiff appears to lay motionless, the video shows at least one

21   defendant appearing  to place his knee on plaintiff's arm.  Another defendant crosses plaintiff's

22   feet, bends them behind plaintiff's knees and then pushes plaintiff's feet towards his head.  At

23   this same time, two defendants can be seen applying some amount of force to plaintiff's wrists.

24   Moreover, the jury heard plaintiff testify that because he was handcuffed and shackled with his

25   pants around his ankles and was instructed by the defendants not to move, he feared that he

26   would be subjected to additional physical force.  After having his restraints removed after

approximately an hour in the safety cell, plaintiff remained in that cell for approximately another hour.

Contrary to defendants' assertion, the evidence described above clearly establishes a use of force. See generally Muehler v. Mena, 544 U.S. 93, 103 (2005) (Kennedy, J., concurring) ("The use of handcuffs is the use of force, and such force must be objectively reasonable under the circumstances."); Mesa v. Prejean, 543 F.3d 264, 272 (5th Cir. 2008) ("Purely psychological injury can serve as a basis for liability under Section 1983."); Vance v. Wade, 546 F.3d 774, 786 (6th Cir. 2008) (denying defendants qualified immunity on claim that defendants used excessive force in "cramming" plaintiff into the back of a police vehicle); Blankenhorn v. City of Orange, 485 F.3d 463, 478 (9th Cir. 2007) (because a reasonable jury could find the tackling of plaintiff, use of hobble restraints on him and punches to subdue him each to be an excessive use of force, summary judgment was precluded); Sallenger v. Oakes, 473 F.3d 731, 742 (7th Cir. 2007) ("The question is not whether Andrew's right to be free from the officers' use of the hobble was clearly established; rather, the issue is whether Andrew's right to be free from the whole range of excessive force as described by the district court was clearly established."); Champion v. Outlook Nashville, Inc., 380 F.3d 893, 903 (6th Cir. 2004) ("[I]t also clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force."); see also Santos, 287 F.3d at 853 ("[E]ven where some force is justified, the amount actually used may be excessive.").

Here, the jury was properly left to decide whether the evidence presented at trial established by a preponderance of the evidence that the force used against plaintiff by defendants in the safety cell was excessive. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."); see also Santos, 287 F.3d at 852 ("[A] jury

might find the officers' testimony that they were restrained in their use of force not credible, and

draw the inference from the medical and other circumstantial evidence that the plaintiff's injuries

were inflicted on him by the officers' use of excessive force.")  Based on the evidence admitted

at the trial of this case a reasonable jury could find, as the jury here found, that the defendants

used excessive force in placing plaintiff in the safety cell.

With respect to defendants' qualified immunity argument, "[g]overnment officials

enjoy qualified immunity from civil damages unless their conduct violates 'clearly established

statutory or constitutional rights of which a reasonable person would have known.'"  Jeffers v.

Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818

(1982)).  When a court is presented with a qualified immunity defense, the central questions for

the court are (1) whether the facts alleged, taken in the light most favorable to the plaintiff,

demonstrate that the defendants' conduct violated a statutory or constitutional right and (2)

whether the right at issue was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001).

"[O]fficials can . . . be on notice that their conduct violates established law even in novel factual

circumstances."  Hope, 536 U.S. at 741.

Here, the jury found that the defendants used excessive force against plaintiff in

connection with his placement in the safety cell in violation of the Fourth Amendment.  That

verdict is consistent with the evidence admitted at trial when viewed in the light most favorable

to the plaintiff.  Moreover, the state of the law in 2008 was such that defendants were on notice

that both the use of force when none was needed and the use of force against a jail inmate in

excess of that necessary under the circumstances confronted, would be in violation of the

constitution.  See Graham, 490 U.S. at 394-95; Smith v. City of Hemet, 394 F.3d 689, 701 (9th

Cir. 2005) (en banc).  Moreover, in 2002, the U.S. Supreme Court recognized that subjecting a

handcuffed inmate to "the restricted position of confinement" and the "unnecessary exposure to

the heat of the sun," was the "gratuitous infliction of wanton and unnecessary pain" that violated

1  rights clearly established under the Eighth Amendment.[6]  See also Hope, 536 U.S. at 738

2  (internal citation and quotation omitted).  See also Graham, 490 U.S. at 394-95; Gibson, 290

3  F.3d at 1197; Liston, 120 F.3d at 976.  Thus, the defendants were also on notice that

4  unnecessarily leaving a compliant inmate, handcuffed and shackled, with his pants around his

5  ankles and soaked in sewer water for an extended period of time in a safety (isolation) cell would

6  violate the Fourth Amendment.  Accordingly, defendants' motion for JMOL on qualified

7  immunity grounds must be denied.

8                                CONCLUSION

9          Accordingly, IT IS HEREBY ORDERED that defendants' April 4, 2011 renewed

10  motion for judgment as a matter of law (Doc. No. 167) is denied.

11  DATED: July 22, 2011.

12

13                                          _____

14                                          DALE A. DROZD
                                            UNITED STATES MAGISTRATE JUDGE
15  DAD:6
    orders.consent/jones1025.o.jmol
16

17

18

19

20

21

22

23

24  _____

25  [6]  The standard applicable in assessing Eighth Amendment excessive use of force claims
    "necessarily involves a more culpable mental state than that required for excessive force claims
    arising under the Fourth Amendment's unreasonable seizures restriction."  Clement v. Gomez,
26  298 F.3d 898, 903 (9th Cir. 2002).

                                            15