1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DRAKE JONES,

11             Plaintiff,                    No. CIV S-09-1025 DAD

12        v.

13   COUNTY OF SACRAMENTO,                   ORDER
     et al.,

14

15             Defendants.

16   _____/

17        This matter came before the court on May 20, 2011, for hearing of plaintiff's

18   motion for attorneys' fees and expenses pursuant to 42 U.S.C. § 1988(b) and Local Rule 54-293.

19   (Doc. No. 168.)[1]  Attorneys Stewart Katz and Guy Danilowitz appeared on behalf of plaintiff

20   Drake Jones.  Attorneys John Lavra and Amanda Butts appeared on behalf of defendants Daniel

21   Morrissey, Justin Chaussee, Ken Becker, Christopher Mrozinski and Chris Conrad.  Oral

22   /////

23   _____

24        [1]  The parties have previously consented to Magistrate Judge jurisdiction pursuant to 28
     U.S.C. § 636(c).  (Doc. No. 96-98.)  U.S. Senior District Judge William B. Shubb, presided over
25   the case through the issuance of the Final Pretrial Order.  On October 27, 2010, following the
     consent of the parties to Magistrate Judge jurisdiction, the matter was referred and reassigned to
26   the undersigned for all purposes.

argument was heard and plaintiff's motion was taken under submission.  For the reasons set forth

below, plaintiff's motion for attorneys' fees and expenses will be granted, in part.

BACKGROUND

On February 3, 2010, plaintiff filed an amended complaint in which he alleged,

pursuant to 42 U.S.C. § 1983, that the defendant deputies unreasonably seized him and used

excessive force against him in violation of his rights under the Fourth Amendment to the U.S.

Constitution and that defendant Morrissey failed to properly supervise the other defendants in

their use of force against plaintiff.

Plaintiff's version of the events, which he presented at trial, can be summarized as

follows.  On August 5, 2008, he was helping a friend move and got into a verbal dispute with the

landlord of the property, resulting in plaintiff's arrest.  Plaintiff was booked into the Sacramento

County Main Jail and was placed into a so-called sobering cell, although there was no indication

that he was under the influence of either alcohol or drugs.  Shortly after being placed in the

sobering cell plaintiff observed raw sewage containing feces and urine coming out of a drain on

the floor of the cell.  Plaintiff attempted to alert jail staff about the situation by banging on the

window and pointing at the drain.  In an attempt to distance himself from the sewage, plaintiff

curled up on a bench/ledge in the sobering cell.  Shortly thereafter, deputies Morrissey, Chaussee,

Becker, Mrozinski and Conrad entered the cell.  Incorrectly believing that plaintiff was

responsible for the flooding of the cell, the deputies grabbed plaintiff, twisted his arms and took

him to the ground and into the raw sewage.  The deputies used their feet and knees and forced

plaintiff's face and body into the sewage on the cell floor.  The deputies then handcuffed

plaintiff, shackled his legs, and forcibly moved him into a so-called safety cell.  On arrival at the

safety cell[2], the defendant deputies forced plaintiff onto the floor face down and told him not to

move.  The defendant deputies left plaintiff laying on his stomach on the floor of the safety cell,

_____

[2]  The safety cell is an isolation cell at the Main Jail.  It has no toilet or sink but instead
merely has a drain in the middle of the floor.

in sewage-soaked clothing and with his hands and legs bound and with his pants pulled down around his ankles for approximately two hours.  Thereafter, the defendant deputies returned to the safety cell, got back on top of plaintiff, twisted his arms and asked if he had "had enough." Plaintiff cried out "yes," and the deputies removed plaintiff's handcuffs and shackles and left the cell.  An hour later, plaintiff was moved to a third jail cell with other inmates and was eventually released.  No criminal charges were ever brought against plaintiff stemming from this arrest.

Defendants denied plaintiff's allegations of wrongdoing on their part.  In summary, they presented the following version of events at trial.  Defendant Deputy Becker testified that he'd come in contact with plaintiff during the booking process and found his behavior during that process to be somewhat uncooperative.  Because of that, defendant Becker decided plaintiff was either under the influence of alcohol or "coming off" of drugs and designated him for placement in the sobriety cell, which was typically dirty.  According to defendant Becker, when he returned to the sobriety cell area he saw water running out of the cell and observed plaintiff banging on the cell window and yelling.  Based upon his observations of plaintiff during the booking process, defendant Becker assumed that plaintiff had intentionally plugged the toilet to flood the sobriety cell.[3]  Becker so informed his fellow defendant deputies, who gathered with defendant Sgt. Morrissey and formed a plan to remove plaintiff from the sobriety cell and move him to a safety cell.  Defendant deputies Chaussee, Becker, Mrozinski and Conrad, in defendant Morrissey's presence and under his personal supervision, entered the sobriety cell and placed their hands on plaintiff to remove him.  As the four deputies guided plaintiff toward the cell door, plaintiff stiffened and began pulling toward the left thereby resisting them.  The defendants took plaintiff to the wet floor of the cell face down only in order to gain control and place him in restraints.  This took some time because plaintiff, while not fighting, was not completely cooperative and also due to the officers encountering mechanical

_____

[3]  The defense conceded that this was a mistaken belief on the part of the deputies.

1   difficulties with the handcuffs and restraints.  According to defendants, plaintiff was taken in

2   shackles to the safety cell because he had resisted the deputies.  Moreover, the shackles were

3   removed approximately an hour after plaintiff was placed in that isolation cell.  While they

4   perhaps did not document checking on plaintiff while in the safety cell as often as they were

5   supposed to, all the actions they took with respect to plaintiff were proper and in keeping with

6   their training and jail procedures.

7        Plaintiff proceeded to trial on the theory that the defendants had engaged in the

8   excessive use of force against him in violation of his Fourth Amendment rights first, in forcing

9   him face down into the sewage on the floor of the sobriety cell and applying unnecessary

10  physical force against him there.  Second, plaintiff argued that the defendants had used excessive

11  force in placing him shackled in the safety cell, in his view, soaked in raw sewage and leaving

12  him there with his pants around his ankles for approximately two hours.

13       All of plaintiff's own actions as well as his interactions with deputies inside the

14  Sacramento County Main Jail, as well as all of his time spent in the three cells, was captured on

15  the jail surveillance camera.  The parties placed those videotapes into evidence and both played

16  and re-played them for the jury at length.  The jury was exposed to the video footage in slow

17  motion, in freeze frame and in every other possible manner of presentation.  Witness after

18  witness interpreted, from their own point of view, what the video of each incident in fact

19  depicted.  Thus, the dispute was clearly framed for the jury: (1) did the defendants violate

20  plaintiff's Fourth Amendment rights by subjecting him to excessive force in the sobriety cell? (2)

21  did the defendants violate plaintiff's Fourth Amendment rights by subjecting him to excessive

22  force in the safety cell? (3) did defendant Sgt. Morrissey fail to properly supervise the deputies

23  under his command in their use of force against plaintiff?

24       The jury trial in this action commenced on February 22, 2011.  On March 9, 2011,

25  the jury return its verdict.  (Doc. Nos. 161-162.)  The jury did not find by a preponderance of the

26  evidence that any of the defendants used excessive force in restraining plaintiff and taking him to

4

the floor of the sobering cell.  (Doc. No. 162 at 2.)  However, the jury did find by a

preponderance of the evidence that all of the defendants used excessive force in violation of the

Fourth Amendment in placing plaintiff in the safety cell under the circumstances as the jury

found them to be.  (Id. )  The jury also found by a preponderance of the evidence that Defendant

Morrissey violated plaintiff's Fourth Amendment rights by failing to supervise the other

defendants.  (Id. at 3.)  The jury awarded plaintiff a total of $31,000.00 in damages split among

the five defendants.  (Id. )  Moreover, the jury found by a preponderance of the evidence that in

violating plaintiff's rights under the Fourth Amendment, each of the five defendants acted

maliciously, oppressively or in reckless disregard for plaintiff's constitutional rights.  (Id.)

Despite this finding, the jury elected not to award plaintiff punitive damages against any of the

defendants.  (Id. at 4.)

　　　　　On April 6, 2011, plaintiff filed the motion for attorneys' fees and expenses now

pending before the court.  (Pl.' Mot. for Fees (Doc. No. 169)).  Defendants filed an opposition on

May 6, 2011, (Defs.' Opp.'n. (Doc. No. 182)), and plaintiff filed a reply on May 13, 2011.  (Pl.'s

Reply (Doc. No. 185)).  As updated by plaintiff's reply, plaintiff seeks attorneys' fees and costs

in the amount of $479,713.12, broken down as follows: (1) a lodestar amount of $391,230; (2)

expenses in the amount of $34,138.12; (3) $18,855.00 for time spent opposing defendants'

renewed motion for judgment as a matter of law; and (4) $35,490 for time spent on plaintiff's

motion for attorneys' fees and plaintiff's reply to defendants' opposition to that motion.  (Pl.'s

Reply (Doc. No. 185) at 30-31.)

STANDARD

　　　　　In an action brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion,

may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of

/////

/////

/////

1 the costs . . . ."[4]  42 U.S.C. § 1988(b).  The Supreme Court has explained the historical

2 underpinnings and purpose of § 1988(b) as follows:

> In Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S.
> 240 (1975), this Court reaffirmed the "American Rule" that each
> party in a lawsuit ordinarily shall bear its own attorney's fees
> unless there is express statutory authorization to the contrary.  In
> response Congress enacted the Civil Rights Attorney's Fees
> Awards Act of 1976, 42 U.S.C. § 1988, authorizing the district
> courts to award a reasonable attorney's fee to prevailing parties in
> civil rights litigation.  The purpose of § 1988 is to ensure "effective
> access to the judicial process" for persons with civil rights
> grievances.  H.R. Rep. No. 94-1558, p. 1 (1976).  Accordingly, a
> prevailing plaintiff " 'should ordinarily recover an attorney's fee
> unless special circumstances would render such an award unjust.' "
> S. Rep. No. 94-1011, p. 4 (1976), U.S. Code Cong. & Admin.
> News 1976, p. 5912 (quoting Newman v. Piggie Park Enterprises,
> 390 U.S. 400, 402 (1968)).

11 Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (parallel citations omitted).  See also Mendez v.

12 County of San Bernardino, 540 F.3d 1109, 1124 (9th Cir. 2008); Sable Commc'ns v. Pac. Tel. &

13 Tel., 890 F.2d 184, 193 (9th Cir. 1989) ("Plaintiffs prevailing in a civil rights action should

14 ordinarily receive attorney's fees unless special circumstances would render such an award

15 unjust.").  "[T]he fee applicant bears the burden of establishing entitlement to an award and

16 documenting the appropriate hours expended and hourly rates."  Hensley, 461 U.S. at 437.  See

17 also Carson v. Billings Police Dept., 470 F.3d 889, 891 (9th Cir. 2006).[5]

18        "The Supreme Court has stated that the lodestar is the 'guiding light' of its

19 fee-shifting jurisprudence, a standard that is the fundamental starting point in determining a

20 reasonable attorney's fee."  Van Skike v. Director, Office of Workers' Compensation Programs,

21 557 F.3d 1041, 1048 (9th Cir. 2009) (quoting City of Burlington v. Dague, 505 U.S. 557, 562

---

[4]  Defendants concede that plaintiff "is technically the prevailing party in this matter."
(Defs.' Opp.'n. (Doc. No. 182) at 7.)

[5]  "The party opposing the fee application has a burden of rebuttal that requires submission
of evidence to the district court challenging the accuracy and reasonableness of the . . . facts
asserted by the prevailing party in its submitted affidavits."  Camacho v. Bridgeport Financial,
Inc., 523 F.3d 973, 982 (9th Cir. 2008) (quoting Gates v. Deukmejian, 987 F.2d 1392, 1397-98
(9th Cir. 1992)).  See also Ruff v. County of Kings, 700 F. Supp.2d 1225, 1228 (E.D. Cal. 2010).

1   (1992)).  See also Rouse v. Law Offices of Rory Clark, 603 F.3d 699, 704 (9th Cir. 2010).

2   Accordingly, a district court is required "to calculate an award of attorneys' fees by first

3   calculating the 'lodestar' before departing from it."  Camacho v. Bridgeport Financial, Inc., 523

4   F.3d 973, 982 (9th Cir. 2008) (quoting Caudle v. Bristow Optical Co. Inc., 224 F.3d 1014, 1028

5   (9th Cir. 2000)).  "The 'lodestar' is calculated by multiplying the number of hours the prevailing

6   party reasonably expended on the litigation by a reasonable hourly rate."  Camacho, 523 F.3d at

7   978 (quoting Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).  See also

8   Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The number of hours to be

9   compensated is calculated by considering whether, in light of the circumstances, the time could

10  reasonably have been billed to a private client.");  Caudle, 224 F.3d at 1028; Morales v. City of

11  San Rafael, 96 F.3d 359, 363 (9th Cir. 1996).  Applying these standards, "a district court should

12  exclude from the lodestar amount hours that are not reasonably expended because they are

13  'excessive, redundant, or otherwise unnecessary.'"  Van Gerwen v. Guarantee Mutual Life Co.,

14  214 F.3d 1041, 1045 (9th Cir. 2000) (quoting Hensley, 461 U.S. at 434).  See also Tahara v.

15  Matson Terminals, Inc., 511 F.3d 950, 955 (9th Cir. 2007).

16          The lodestar figure is presumptively reasonable.  Dague, 505 U.S. at 562 ("We

17  have established a 'strong presumption' that the lodestar represents the 'reasonable' fee . . . .");

18  Rouse, 603 F.3d at 704; Crawford v. Astrue, 586 F.3d 1142, 1149 (9th Cir. 2009).  Accordingly,

19  "[a]djustments to the lodestar amount are allowed only 'if circumstances warrant,' [citation

20  omitted], and are reserved for 'rare' or 'exceptional' cases.  [citation omitted]"  Rouse, 603 F.3d

21  at 704.  In light of these governing standards, any adjustments to the lodestar

22              must be carefully tailored, drawing from a finite pool of factors
                relevant to the reasonableness determination and only to the extent
23              a factor has not been subsumed within the lodestar calculation.
                See Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 982 (9th
24              Cir. 2008) (citing the factors set out in Kerr v. Screen Extras Guild,
                Inc., 526 F.2d 67, 70 (9th Cir. 1975)).  Those factors include the
25              preclusion of other employment by the attorney due to acceptance
                of the case; time limitations imposed by the client or the
26              circumstances; the amount involved and the results obtained; the

                                              7

1  'undesirability' of the case; the nature and length of the
2  professional relationship with the client; and awards in similar
   cases.

3  Rouse, 603 F.3d at 705.  See also Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006)

4  Finally, in applying these legal standards the court is cognizant of the following

5  guidance provided by the Ninth Circuit:

6  Lawyers must eat, so they generally won't take cases
   without a reasonable prospect of getting paid.  Congress thus
7  recognized that private enforcement of civil rights legislation relies
   on the availability of fee awards:  "If private citizens are to be able
8  to assert their civil rights, and if those who violate the Nation['s]
   fundamental laws are not to proceed with impunity, then citizens
9  must have the opportunity to recover what it costs them to
   vindicate these rights in court."  S. Rep. No. 94–1011, at 2 (1976),
10 as reprinted in 1976 U.S.C.C.A.N. 5908, 5910. [fn. omitted]  At
   the same time, fee awards are not negotiated at arm's length, so
11 there is a risk of overcompensation.  A district court thus awards
   only the fee that it deems reasonable.  See Hensley v. Eckerhart,
12 461 U.S. 424, 433 (1983).  The client is free to make up any
   difference, but few do.  As a practical matter, what the district
13 court awards is what the lawyer gets.

14 In making the award, the district court must strike a balance
   between granting sufficient fees to attract qualified counsel to civil
15 rights cases, City of Riverside v. Rivera, 477 U.S. 561, 579–80
   (1986), and avoiding a windfall to counsel, see Blum v. Stenson,
16 465 U.S. 886, 897 (1984) (quoting S. Rep. No. 94–1011, at 6
   (1976)).  The way to do so is to compensate counsel at the
17 prevailing rate in the community for similar work; no more, no
   less.

18

19 Moreno, 534 F.3d at 1111.  With this guidance firmly in mind, the court will turn to the fee

20 application in this civil rights action.

21 ANALYSIS

22 I.  Attorneys' Fees For Litigation And Trial

23 A.  Reasonable Hourly Rates

24 Courts generally calculate reasonable hourly rates according to the prevailing

25 market rates in the relevant legal community.  Blum, 465 U.S. at 895; Ingram v. Oroudjian,

26 ___F.3d___, 2011 WL 3134530, at *2 (9th Cir. July 27, 2011) ("We have held that '[i]n

8

1   determining a reasonable hourly rate, the district court should be guided by the rate prevailing in

2   the community for similar work performed by attorneys of comparable skill, experience, and

3   reputation.'"); Carson, 470 F.3d at 891.  It is also the general rule in the Ninth Circuit that the

4   "relevant legal community" is the forum district and that the local hourly rates for similar work

5   should normally be employed.  Gates v. Rowland, 39 F.3d 1439, 1449 (9th Cir. 1994);  Gates v.

6   Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992); L.H. v. Schwarzenegger, 645 F. Supp.2d 888,

7   893 (E.D. Cal. 2009) ("Typically, the relevant legal community is that in which the forum district

8   is located [but] [t]he prevailing party may be awarded the reasonable rates of another legal

9   community when it has tendered evidence that attorneys adequate to conduct the litigation at

10  issue were unavailable in the forum market.")  The burden is on the applicant to produce

11  satisfactory evidence that the requested rate is "in line with those prevailing in the community for

12  similar services by lawyers of reasonably comparable skill, experience and reputation." Blum,

13  465 U.S. at 895 n.11.  See also Nadarajah v. Holder, 569 F.3d 906, 916 (9th Cir. 2009);

14  Camacho, 523 F.3d at 978; L.H., 645 F. Supp.2d at 893 ("Finally, a reasonable rate should reflect

15  not only the market rates, but the skill and experience of the prevailing party's counsel.")

16          Here, plaintiff seeks the following hourly rates:  $350 per hour for the services of

17  attorney Stewart Katz; $300 per hour for the services rendered by attorney Joseph George, Jr.;

18  and $150 per hour for the services of attorney Guy Danilowitz.  (Pl.'s Mot. for Fees (Doc. No.

19  169) at 16-17.)[6]  Defendants counter that the prevailing market rate for attorney Stewart Katz

20  should not exceed $300 per hour and that the rate for attorney Joseph George, Jr., should not

21  exceed $150 per hour.  (Defs.' Opp.'n. (Doc. No. 182) at 13-14.)  Defendants do not object to the

22  /////

23  /////

24  /////

25

26          [6] Page number citations such as this one are to the page number reflected on the court's
    CM/ECF system and not to page numbers assigned by the parties.

9

1  hourly rate requested by plaintiff for time reasonably expended attorney Guy Danilowitz.  (Id. at

2  9.)[7]

3          With respect to the prevailing market rate for services rendered by himself,

4  attorney Katz has submitted his own declaration establishing the following.  Mr. Katz has been a

5  practicing attorney since 1987.  (Katz Decl. (Doc. No. 170) at 1.)  He has tried over 150 cases to

6  verdict in federal and state court, has litigated over one hundred civil rights actions in federal and

7  state courts, has represented plaintiffs in several cases that have resulted in published federal

8  court decisions, has argued cases before the Ninth Circuit Court of Appeals and the California

9  Supreme Court, has given MCLE presentations on issues related to § 1983 litigation and has

10  lectured to law school classes on the topic of civil rights litigation.  (Id. at 1-2.)

11          Regarding the prevailing market rate for similar services by lawyers of reasonably

12  comparable skill, experience and reputation to himself, Mr. Katz has also provided the court with

13  declarations from attorneys Andrea M. Miller, Mark E. Merin, Franklin G. Gumpert and Carter

14  C. White.  (Doc. No. 173-176.)[8]  Each of these lawyers have extensive experience litigating civil

15  rights actions in the Eastern District of California; Ms. Miller[9], Mr. Merin and Mr. White

16  typically on behalf of plaintiffs and Mr. Gumpert typically on behalf of defendants.  Each have

17  practiced before the undersigned and are respected members of the bar of this court.  Their

18  declarations each support the $350 hourly rate requested by Mr. Katz as consistent with the

19

20          [7] Defendants' lack of objection on this point is well-taken.  The declarations of
Sacramento civil rights litigators submitted by plaintiff establish that the requested rate for Mr.
21  Katz's third-year associate attorney is low compared to the prevailing market rate for attorneys
less experienced than attorney Danilowitz in the relevant practice area.  See Declaration of
22  Andrea M. Miller (Doc. No. 173) at 5-6 (justifying market rate of $170-$250): Declaration of
Carter C. White (Doc. No. 176) at 5.)

23          [8] "[A]ffidavits of . . . other attorneys regarding prevailing fees in the community . . . are
satisfactory evidence of the prevailing market rate" but "do not conclusively establish the
24  prevailing market rate."  Camacho, 523 F.3d at 980 (internal citations and quotations omitted).

25          [9] Andrea M. Miller was counsel of record, both in the district court and on appeal, for the
prevailing plaintiff in the case of Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir.
26  2008), cited herein.

1    prevailing market rate in Sacramento for services by lawyers of reasonably comparable skill,

2    experience and reputation.[10]

3            Specifically, Mr. Merin (whose extensive experience in civil rights litigation is

4    well-known to this court) has declared that his hourly rate for office consultations is $350 per

5    hour, up to $550 an hour for litigating civil rights cases and that he views this rate as being

6    slightly less than that charged by comparable attorneys doing similar work.  Declaration of Mark

7    E. Merin (Doc. No. 174) at 5.  Most importantly perhaps, Mr. Merin declares that he has been

8    awarded stipulated, but Court ordered, fees in civil rights cases in excess of $400 per hours and

9    stipulated fees in such litigation of more than $550 per hour.  Id. at 4-6.  Mr. Merin also states

10   that the prevailing market rate in Sacramento for attorneys with more than fifteen years of

11   experience[11] is between  $300 and $550 per hour and that the bottom of that prevailing rate is

12   now commonly $350.  Id. at 5.  Finally, Mr. Merin concludes that although not as experienced as

13   himself, attorney Katz is one of the more experienced civil rights litigators in the Sacramento

14   area.  Id. at 7.

15           Mr. Gumpert has been a civil litigator for over 35 years and has been opposing

16   counsel to attorney Katz in four litigated civil rights actions.  Declaration of Franklin G. Gumpert

17   (Doc. No. 175) at 1-2.  His declaration speaks to Mr. Katz's skill and determination as a litigator.

18   Id. at 2-3.  In cases such as this one, Mr. Gumpert opines that based upon his extensive

19   experience the prevailing market rate for an attorney of Mr. Katz's skill and experience is $350

20   to $400 per hour.  Id. at 3.  Mr. White has significant relevant experience and, since 2001 has

21   served as the supervising attorney of the King Hall Civil Rights Clinic at the U.C. Davis School

22   of Law.  Declaration of Carter C. White (Doc. No. 176) at 2.  He states he is very familiar with

23

24           [10]  In addition, Mr. Katz has referred to several orders from judges of this District Court
     supporting the requested rate of $350 per hour for work he performed on behalf of plaintiff in
25   this case.  (See Pl.'s Mot. for Fees (Doc. No. 169.) at 18-20.)

26           [11]  As noted, attorney Katz has been practicing for approximately twenty-four years.

attorney Katz and his work and is generally familiar with the rates charged by civil rights

litigators in Sacramento and fee awards made by this court.  Id. at 4-5.  Mr. White concludes that

the requested rate of $350 per hour is a reasonable rate for a civil rights trial attorney of Mr.

Katz's background and qualifications in Sacramento, is consistent with the prevailing market rate

and that the 842.1 hours expended by Mr. Katz in the prosecution of this case is also reasonable

Finally, in her declaration Ms. Miller states that for the last five years her hourly

rate, depending on the circumstances, has ranged from $250 to $400 per hour, with a rate of $350

per hour in plaintiff's civil rights litigation.  Declaration of Andrea M. Miller (Doc. No. 173) at

4.[12]  She also declares that the $350 per hour rate has been awarded by both the state and federal

courts in Sacramento to highly experienced attorneys in such cases.  Id.  Ms. Miller states that

she knows Mr. Katz to be a highly experienced civil rights litigator, with particular expertise in

police misconduct cases, and that she believes he should be compensated at the top prevailing

rate for such an attorney in this district.  Id. at 5.  Although she believes that $350 per hour is a

reasonable hourly rate in this community for the work he performed in this case, Ms. Miller

states that she would have sought an hourly rate of $300 per hour for that work, $250 per hour for

associates and $80 per hour for paralegals.  Id. at 5.[13]  However, ultimately Ms. Miller concludes

that the requested $350 per hour is the reasonable prevailing market rate because it is inclusive of

paralegal time spent on the case, which she believes would have been extensive.  Id.

Counsel for defendants opposes the requested rate of $350 per hour for the

services provided by attorney Katz, asserting that "the prevailing hourly rate awarded in the

Eastern District, Sacramento Division, for top-rated counsel rarely exceeds $300 per hour."

---

[12]  Ms. Miller has been a practicing lawyer and a highly respected member of the bar of
this court for over 30 years.  The depth of her experience is well know to the court.  See fn. 9,
above.

[13]  The court notes that six years ago, Ms. Miller filed a § 1988 fee application seeking a
rate of $300 per hour for time she expended from approximately 2001 through 2005 on behalf of
a successful plaintiff in a civil rights action.  See Moreno, 534 F.3d at 1110-11.  The present
action was commenced in April of 2009.

1    (Defs.' Opp.'n. (Doc. No. 182) at 10).  Defendants point to the fee awards in Alaniz v. Robert M.

2    Peppercorn, M.D., Inc., No. 2:05-cv-2576-MCE-DAD, 2008 WL 5000191 (E.D. Cal. Nov. 21,

3    2008) and Costa v. National Action Financial Services, No. CIV. S-05-2084 FCD/KJM, 2008

4    WL 1925235 (E.D. Cal. Apr. 30, 2008)), as the two rare examples of top-rated litigators being

5    awarded an hourly rate of $350 in this district.[14]

6            The court has reviewed the authorities cited by the parties in support of their

7    respective arguments and has conducted its own research in assessing whether plaintiff's

8    requested rate of $350 per hour for work performed by attorney Katz is "in line with those

9    prevailing in the community for similar services by lawyers of reasonably comparable skill,

10   experience and reputation."  Blum, 465 U.S. at 895 n.11.  In doing so, the court has paid

11   particular attention to those cases, decided within two years of the time when counsel began their

12   work in this case, in which judges of the Eastern District of California addressed the prevailing

13   market rate in Sacramento.  See Bell v. Clackamas County, 341 F.3d 858, 869 (9th Cir. 2003)

14   ("We hold, however, that it was an abuse of discretion in this case to apply market rates in effect

15   more than two years *before* the work was performed.") (emphasis in original).

16           The court is not persuaded by defendants argument for a $300 prevailing market

17   rate for time expended by attorney Katz.  Contrary to defendants' suggestion, Alaniz and Costa

18   are not the only cases in which judges of this court have issued fee awards with hourly rates in

19   excess of $300 per hour for top-rated counsel in similar matters and for similar services as those

20   that were rendered in this case.  For instance, in Cosby v. Autozone, Inc., No. CIV. S-08-505

21   LKK DAD, 2010 WL 5232992 (E.D. Cal. Dec. 16, 2010), plaintiff's counsel obtained a

22

23           [14]  In Alaniz, plaintiff obtained a successful jury verdict based on a retaliation claim in
     violation of the California Fair Employment and Housing act, and the court found a requested
24   rate of $350 "to be reasonable."  2008 WL 5000191 at *1-3.  In Costa v. National Action
     Financial Services, No. CIV. S-05-2084 FCD/KJM, 2008 WL 1925235 (E.D. Cal. Apr. 30,
25   2008), after succeeding on partial summary judgment plaintiff sought reasonable attorney's fees
     pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and the California
     Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 et seq., and the court found
26   that "rates of $315.00 per hour are reasonable."  (Id. at *6.)

1    successful verdict on claims arising under California's Fair Employment and Housing Act.

2    Cosby, 2010 WL 52322992 at *1.  In determining the lodestar in that case the court awarded an

3    unopposed rate of $375 per hour.[15]  (Id.)  Likewise, in Taylor v. Chaing, No. CIV S-01-2407

4    JAM GGH, 2009 WL 453050 (E.D. Cal. Feb. 23, 2009), plaintiff's successfully challenged

5    California's escheat process and in awarding attorney fees to counsel for the prevailing plaintiffs

6    the court found that "an appropriate hourly rate is $335/hr."  (Id. at *11.)

7              However, perhaps the most instructive case in determining the proper prevailing

8    market rate in connection with the pending fee application is the order awarding attorneys' fees

9    issued in Beecham v. City of West Sacramento, No. Civ. S-07-1115 JAM EFB, 2009 WL

10   3824793 (E.D. Cal. Nov. 16, 2009).  In that case the plaintiffs brought a civil rights action

11   pursuant to 42 U.S.C. § 1983 against the City of West Sacramento and four West Sacramento

12   Police Department officers claiming that they had been subjected to excessive use of force and

13   false arrest.  Beecham, 2009 WL 3824793 at *1.  After a twelve-day jury trial, the court granted

14   Judgment as a Matter of Law in favor of plaintiffs and submitted the case to the jury to determine

15   the appropriate amount of damages to award.  Id.  The jury awarded plaintiffs damages in the

16   amount of $33,400.  Id.  With taxable costs of $13,739.33, the judgment totaled $47,139.33.

17   (Id.)  Following trial, plaintiffs filed a motion for attorneys' fees in which their two counsel

18   sought an award based on the prevailing market rates in Bay Area of $550 and $525 per hour.  Id.

19   at 3.[16]  Alternatively, plaintiffs' counsel sought Sacramento market hourly rates of $400 and

20

21          [15]  On August 1, 2011, in a memorandum decision, the Ninth Circuit held that the District
     Court in Cosby erred in concluding that the economic and non-economic damages awarded by
22   the jury were not excessive.  The Ninth Circuit remanded the issue of damages to District Court
     for remittitur with the option of granting a new trial on the issue of damages.
23

24          [16]  They also sought $150 per hour for time expended by paralegals and $125 per hour for
     the time of law clerks.  Beecham, 2009 WL 3824793 at *3.  The court in Beecham concluded
25   that these rates were reasonable in the Sacramento market and awarded fees based on those rates.
     Id. at *4.  The court notes that the $150 an hour paralegal rate in Beecham is the same rate sought
26   by plaintiff here for the work of experienced, third-year associate attorney Danilowitz.  See fn. 7,
     above.

$350, respectively.  Id.  Because the case was litigated and tried in Sacramento, the court found

that the prevailing Sacramento market rates should apply.  Id.  Based upon the evidence

submitted in that case, the court found in its order filed November 16, 2009, that "[i]n

Sacramento, the prevailing market rate for similar services of lawyers with reasonably

comparable skill, experience, and reputation . . . is $375 per hour."  Id. at *4.

In light of the declarations of experienced Sacramento attorneys offered by

plaintiff and the recent fee awards issued by judges of this court, and because of Mr. Katz's

considerable experience and expertise in this very specialized area, the court concludes that the

requested rate of $350 per hour for the services rendered by attorney Katz in this case is clearly in

line with those prevailing in the Sacramento market for similar services by lawyers of reasonably

comparable skill, experience and reputation.

Turning to the fee application with respect to the proper hourly rate for attorney

George, Jr., however, the court notes that he has considerably less experience and expertise then

Mr. Katz in civil rights litigation.  Moreover, Mr. George has been practicing law for only twelve

years and has been a civil litigator for roughly ten years.  (See Pl.'s Mot. for Fees (Doc. No. 169.)

at 17-18.)  Finally, plaintiff has not provided the same level of support in seeking a prevailing

market hourly rate of $300 for time expended by attorney George on this case.  In light of these

distinctions and the lack of showing by plaintiff, the court finds that a mere $50 per hour

difference in the respective hourly rates for attorney George and that of attorney Katz, does not

appear to be sufficiently supported.

On the other hand, defendants conclusory argument that the appropriate hourly

market rate for services rendered by attorney George is only $150 is likewise unpersuasive.

(Defs.' Opp.'n. (Doc. No. 182) at 14.)  In support of this contention, defendants cite only the

attorney fees award order issued in Schultz v. Ichimoto, No.1:08-CV-526-OWW-SMS, 2010 WL

/////

/////

15

1   3504781, (E.D. Cal. Sept. 7, 2010).[17]  However, in <u>Schultz</u> prevailing defendants sought an

2   award of fees for time expended by associate level attorneys serving as their counsel but did not

3   submit evidence regarding the background, experience or education of the associate attorneys and

4   also failed to provide "any evidence upon which to determine the prevailing market rate."  2010

5   WL 3504781, at *7-8.  Given the prevailing party's complete failure to support their request, the

6   court in <u>Schultz</u> found that it was appropriate for the fee requested to be "reduced or excluded

7   altogether."  <u>Id.</u> at *8.

8          Here, attorney George has provided a supporting declaration addressing his

9   background, experience and education.  (<u>See</u> George Decl. (Doc. No. 172)).  Plaintiff has also

10  referred the court to a number of cases relevant to the determination of the prevailing Sacramento

11  market rate for an attorney of Mr. George's level of experience.  (<u>See</u> Pl.'s Mot. for Fees (Doc.

12  No. 169) at 18-20.)  In addition, in her declaration Ms. Miller provides support for a $250

13  Sacramento market hourly rate for associates.  (<u>See</u> Miller Decl. at 5.)  Finally, as noted above

14  judges of this court have found $150 an hour to be a reasonable rate for the services of a

15  paralegal in similar civil rights litigation, not an attorney with ten years of litigation experience.

16  <u>See</u> <u>In re Morlas</u>, No. 09-cv-695-JAM-DAD, 2010 WL 3069926, at *2 (E.D. Cal. Aug. 5, 2010)

17  (finding $150 per hour to be a reasonable rate for the services of a paralegal and awarding rates

18  of $200 and $240 per hour for the services of co-counsel); <u>Beecham</u>, 2009 WL 3824793 at *4

19  /////

20  /////

21  /////

22  /////

23

24        [17]  Counsel for defendants is advised that it is standard convention to include not only the
      court's case number, in this instance No.1:08-CV-526-OWW-SMS, but also the date of the
25    specific order cited, in this instance September 7, 2010, when citing to decisions available only
      on electronic media.  <u>See</u> Blue Book Rule 10.8.1.  Failure to provide such information needlessly
26    increases the time required for the court to locate the specific order being cited by counsel.

1  (rate of $150 per hour awarded for paralegal services as the Sacramento market rate).[18]

2         The court notes that in the context of a motion for entry of default judgment on a

3  claim brought under the Americans with Disabilities Act, this court recently found the

4  Sacramento market rate for an attorney with roughly eleven years of experience rendering

5  services in a straightforward matter involving no novel or difficult questions to be $250 an hour.

6  See Loskot v. D & K Spirits, LLC, No. 2:10-cv-0684 WBS DAD, 2011 WL 567364, at *6 (E.D.

7  Cal. Feb. 15, 2011) (citing Robinson v. Padilla , No. 2:07-cv-1072-GEB-KJM, 2008 WL 956166

8  at *1 (E.D. Cal. Apr.8, 2008) (awarding attorney fees at an hourly rate of $250 in an ADA case in

9  which the plaintiff obtained default judgment) and Garcia v. Tariq, No. 2:06-cv-00826-MCE-

10  EFB, 2007 WL 2492614 at *3 (E.D. Cal. Aug.30, 2007) (noting four Eastern District decisions in

11  finding the requested rate of $250 per hour reasonable in an ADA case where the plaintiff's

12  counsel obtained a default judgment).  In addition to these recent decision of this court, Ms.

13  Miller's declaration supports a finding that the Sacramento market rate for an attorney of Mr.

14  George's experience is $250 per hour.  Accordingly, that is the rate that will be incorporated in

15  the award.

16       B.  Hours Expended in Litigation And Trial

17         As noted above, the fee applicant also bears the burden of establishing the

18  appropriate hours expended.  Hensley, 461 U.S. at 437; see also Carson, 470 F.3d at 891;  Jadwin

19  v. County of Kern, 767 F. Supp.2d 1069, 1100 (E.D. Cal. 2011) ("The fee applicant bears the

20  burden of documenting the appropriate hours expended in the litigation and must submit

21  evidence in support of those hours worked.")  The party opposing the fee application has a

22

23      [18]  The court also finds defendants' objection to a $50 an hour separation between the
rates for attorneys George and Katz to be inconsistent with their argument that Mr. George

24  should receive the same hourly rate as associate attorney Danilowitz because Mr. Danilowitz has
considerably less experience then Mr. George.  Associate attorney Danilowitz had been a

25  practicing attorney for less then a year when this action commenced.  (See Danilowitz Decl.
(Doc. No. 171) at 1.)  As noted above, attorney George has been practicing law for twelve years,

26  ten as civil litigator.  (See Pl.'s Mot. for Fees (Doc. No. 169).) at 17-18.)

1    burden of rebutting that evidence. <u>Camacho</u>, 523 F.3d at 982; <u>see</u> <u>also</u> <u>Toussaint</u>, 826 F.2d at

2    904; <u>Jadwin</u>, 767 F. Supp.2d at 1100 ("The party opposing the fee application has a burden of

3    rebuttal that requires submission of evidence to the district court challenging the accuracy and

4    reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted

5    affidavits.")

6           Here, plaintiff seeks a fee award for 842.1 hours of work performed by attorney

7    Katz, 469.9 hours of work by attorney Danilowitz and 86.7 hours of work by attorney George.

8    (Pl.'s Mot. for Fees (Doc. No. 169.) at 14.)  Asserting a number of specific objections,

9    defendants argue that the number of attorney hours requested by plaintiff include time that was

10   billed to this matter unreasonably.  (Defs.' Opp.'n. (Doc. No. 182) at 7-9.)  The court will

11   address defendants' specific objections in turn below.

12           1) <u>Opposing Summary Judgment</u>

13           Defendants seeks a reduction of 51.4 hours from the total attorney time sought for

14   Mr. Katz and 25.3 hours from the total time sought for Mr. Danilowitz in connection with their

15   work opposing defendants' successful motion for partial summary judgment.  (<u>Id.</u> at 15-16.)

16   Plaintiff opposes this reduction.  (Pl.'s Reply (Doc. No. 185) at 15-16.)  However, neither party

17   has cited any authority in support of the position they have taken in connection with these

18   disputed attorney hours.

19           In this regard, plaintiff seeks compensation for attorney hours spent opposing

20   defendants' motion for summary judgment as to three supervisorial defendants[19] whose alleged

21   liability was based solely on plaintiff's claims against them for failure to train, failure to

22   supervise and for negligence.  The District Judge previously assigned to the case granted

23   defendants' motion for summary judgment.  (Doc. No. 80.)  In doing so, the court noted that

24

25           [19]  The three defendants in question were the Sacramento County Sheriff, the Sacramento
     County Main Jail Commander and the Sheriff's Department Chief of Correctional and Court
26   Services.

plaintiff did not oppose entry of judgment in favor of these defendants on his claims for failure to train and negligence.  (Id. at 8.)  The court also found that the only evidence submitted by plaintiff in connection with his failure to supervise claim against these three defendants was with respect to their alleged mishandling of plaintiff's citizen's complaint following the incident.  (Id at 17.)  The court concluded that such evidence of conduct occurring after the alleged constitutional violation by the other defendants could not be said to have played any role in the constitutional violation itself.  (Id.)  Accordingly, the court granted summary judgment in favor of the three supervisorial defendants.  (Id.)

The Supreme Court has held as follows:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee.  Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.

Hensley, 461 U.S. at 440.  See also Thomas v. City of Tacoma, 410 F.3d 644, 649 (9th Cir. 2005) ("[H]ours expended on unrelated, unsuccessful claims should not be included in an award of fees[.]") (internal citation and quotation omitted).   The Ninth Circuit has attempted to offer guidance in applying this concept of "relatedness" in the context of fee award applications.

> Echoing the Supreme Court's description of related-claim cases, we have said that related claims involve a common core of facts or are based on related legal theories.  Hensley, 461 U.S. at 435; Cabrales v. County of L.A., 864 F.2d 1454, 1465 (9th Cir.1988), vacated, 490 U.S. 1087 (1989), and reinstated, 886 F.2d 235 (9th Cir.1989).  Often, related claims involve both a common core of facts and related legal theories.  See, e.g., Sorenson, 239 F.3d at 1147.  However, contrary to the district court's understanding, we have not required commonality of both facts and law before concluding that unsuccessful and successful claims are related.
>
> In Schwarz v. Secretary of Health & Human Services, 73 F.3d 895, 902-03 (9th Cir.1995), we examined our cases concerning "relatedness" in fee awards.  We acknowledged that the test for relatedness of claims is not precise.  Id. at 903.  However, we offered some guidance, explaining that "the focus is to be on whether the unsuccessful and successful claims arose out of the

same 'course of conduct.' If they didn't, they are unrelated under Hensley." Id.  We explained that claims are unrelated if the successful and unsuccessful claims are "distinctly different" both legally and factually.  Id. at 901, 902.  Again echoing Hensley, we reasoned that such hours are excludable because work on such distinctly different claims "cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.' " Id. at 901 (quoting Hensley, 461 U.S. at 435 (internal quotation marks omitted)).  We cited cases in which we asked "whether it is likely that some of the work performed in connection with the unsuccessful claim also aided the work done on the merits of the successful claim."  Id. at 903 (brackets and internal quotation marks omitted).  Ultimately, however, we reaffirmed that the focus is on whether the claims arose out of a common course of conduct. Id.  In short, claims may be related if either the facts *or* the legal theories are the same.

Plaintiff asserted numerous legal theories against several defendants.  However, all his claims arose out of a common core of facts and a common course of conduct:  Plaintiff's arrest, detention, and prosecution.  In such a situation, we cannot say that the claims the district court excluded were "entirely distinct and separate" from the successful claims.  Sorenson, 239 F.3d at 1147 (internal quotation marks omitted).

Webb v. Sloan, 330 F.3d 1158, 1168-69 (9th Cir. 2003) (parallel citations omitted).  See also

Dang v. Cross, 422 F.3d 800, 813 (9th Cir. 2005) (the focus is on whether the unsuccessful and

successful claims arose out of the same course of conduct); Thorne v. El Segundo, 802 F.2d

1131, 1141 (9th Cir. 1986) (In assessing the issue of relatedness, a court should consider

"whether the relief sought on the unsuccessful claim 'is intended to remedy a course of conduct

entirely distinct and separate from the course of conduct that gave rise to the injury on which the

relief granted is premised.'")

Here, plaintiff's claims against the three supervisorial defendants and those

against the defendants who proceeded to trial cannot be said to have arisen out of a common core

of facts or a common course of conduct.  The claims against the latter defendants involved the

use of force directly by deputies against plaintiff during his detention at the Sacramento County

Main Jail.  In contrast, as noted above, plaintiff did not oppose entry of summary judgment in

favor of the three supervisorial defendants on his failure to train and negligence claims against

1   them.  All of the time his attorneys expended in opposing summary judgment as to these three

2   defendants was focused on plaintiff's claim that these defendants failed to adequately supervise

3   the defendants who engaged in the use of force.  However, the only evidence plaintiff presented

4   related solely to the supervisorial defendants' alleged mishandling of plaintiff's citizen's

5   complaint that was filed after the incident.  The court found that such evidence did not relate at

6   all to the claimed constitutional violation because it could not have played a role in the conduct

7   engaged in by the deputies at an earlier time.  By its very nature, plaintiff's actual claim against

8   these three defendants and his claims that went to trial did not arise out of a common core of

9   facts or course of conduct.  Moreover, the hours spent in unsuccessfully opposing summary

10  judgment as to these three defendants are easily isolated.  See Webb, 330F.3d at 1169 (cautioning

11  that "the district court should exclude the hours spent on that [unrelated, unsuccessful] claim

12  only if those hours can be isolated.")

13          Because hours expended on unrelated, unsuccessful claims should not be included

14  in an award of fees, the 51.4 hours sought for Mr. Katz and 25.3 hours sought for Mr. Danilowitz

15  in connection with their work opposing the three supervisorial defendants' successful motion for

16  partial summary judgment will be excluded from the fee award.  See Bradford v. City of Seattle,

17  No. C07-365-JPD, 2008 WL 2856647, at *13 (W.D. Wash. July 16, 2008) (where plaintiff in a

18  § 1983 action was successful at trial on his unlawful arrest and excessive use of force claims

19  against the defendant police officer, attorney time spent on plaintiff's unsuccessful municipal

20  liability claim was excluded from fee award because the claim was legally and factually distinct

21  from the successful claim); see also Tatum v. City of New York, No. 06-cv-4290 (PGG)(GWG),

22  2010 WL 334975, at *11 (S.D.N.Y. Jan. 28, 2010) (where plaintiff prevailed on § 1983 claim

23  against defendant correctional officer for conspiring and aiding and abetting an inmate assault on

24  plaintiff, time expended by plaintiff's attorney on unsuccessful municipal liability and negligent

25  hiring claims against the defendant city which were dismissed at summary judgment, excluded

26  /////

21

1   from § 1988 fee award as not arising from the same core facts or the same legal theory as the

2   successful claims).

3                          2) Time Allegedly Spent On Discovery Related To Unsuccessful Claims

4                  Defendants also seek a reduction for attorney hours spent by plaintiff's counsel on

5   discovery related to "departmental issues" such as Sacramento County's policies, procedures and

6   practices for booking, cell placement, use of force, and internal investigations, which defendants

7   argue also pertained only to plaintiff's unsuccessful claims against the supervisorial defendants

8   and upon which defendants were granted summary judgment.  (Defs.' Opp.'n. (Doc. No. 182) at

9   16.)  Defendants contend that the hours attributed to attorney Mr. Katz should therefore be

10  reduced by another 123.5 hours and that attorney Danilowitz's hours should be reduced by 67.1

11  hours, for time both attorneys spent on "extensive discovery" related to plaintiff's unsuccessful

12  claims in this respect.  (Id.)

13                 The court finds this argument by defendants to be unpersuasive.  Testimony and

14  other evidence related to the policies, procedures and practices for booking, cell placement, use

15  of force, and internal investigations was admitted at the trial of this matter because it was

16  relevant to plaintiff's claims against the defendant deputies.  The conducting of discovery in the

17  areas objected to by defendants was inextricably intertwined with plaintiff's claims, the majority

18  upon which he prevailed, that the defendants subjected him to the excessive use of force inside

19  the jail.[20]

20  /////

21

22         [20]  It is important to recognize that it was plaintiff's theory at trial that he was improperly
    placed in the sobriety cell in the first place, despite the lack of any evidence that he was under the
23  influence, because one of the defendant officers didn't like the way he had behaved during the
    booking process.  That same officer, according to plaintiff, incorrectly assumed that plaintiff had
24  flooded the sobriety cell and reported the same to his fellow defendant officers, leading to all five
    defendants entering the sobriety cell, taking control of plaintiff and ultimately escorting him to
25  the safety isolation cell in shackles.  It was an important part of plaintiff's presentation to point
    out instances in which the conduct of the defendants, both during and after the incident,  was not
26  in keeping with departmental policies and procedures.

                                                    22

1    Accordingly, the court finds that these challenged hours were expended by

2   plaintiff's attorneys on claims related to those upon which plaintiff prevailed.  Therefore, these

3   hours will not be deducted from the total attorney hours sought by plaintiff in his fee application.

4    3) <u>Settlement Efforts</u>

5    Defendants next assert that plaintiff "should not be able to use Defendants' lack of

6   a settlement offer in response to completely unreasonable demands as a justification for receiving

7   disproportionate fees."  (Defs.' Opp.'n. (Doc. No. 182) at 18.)  While it is apparent from this

8   contention that defendants seek to reduce the number of attorney hours claimed by plaintiff,

9   defendants provide no specific number of hours they wish to have deducted based on this broad

10   argument.

11    As noted above, "[t]he party opposing the fee application has a burden of rebuttal

12   that requires submission of evidence to the district court challenging the accuracy and

13   reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted

14   affidavits."  <u>Jadwin</u>, 767 F. Supp.2d at 1100.  <u>See also</u> <u>Camacho</u>, 523 F.3d at 982; <u>Toussaint</u>, 826

15   F.2d at 904.  Here defendants have submitted no evidence to support their challenge with respect

16   to the number of hours expended by plaintiff's counsel with respect to settlement negotiations

17   and therefore have failed to meet their burden of rebuttal.  The number of such hours included in

18   plaintiff's application for this purpose will therefore be fully credited.

19    4) <u>Multiple Attorneys at Trial</u>

20    Defendants next contend that the 69.8 hours attributed to attorney Danilowitz for

21   his attendance at the trial should be subtracted from the total attorney hours expended on behalf

22   of plaintiff because, according to defendants, this case involved a simple excessive force claim

23   which required only one attorney at trial.  (Defs.' Opp.'n. (Doc. No. 182) at 7-8.)

24    Certainly there are cases that do not warrant the presence of second-chair counsel

25   to assist lead counsel at trial and published fee award decisions so reflect.  Nonetheless, as many

26   other published fee award decisions indicate, there are many cases where the presence of second-

23

chair counsel to assist in the presentation of a party's case at trial is imminently reasonable.  This

is such a case.  While defendants characterize the case as involving a simple excessive force

claim, the trial was hotly contested in every respect.  Indeed, as noted above, counsel literally

argued the significance of the video evidence on a frame-by-frame basis.  There were a great

number of exhibits involved in the trial, as well as extensive video and photographic evidence

requiring organizational skills and some degree of technical expertise to present to the jury.  In

the court's view the case was not a simple one to try, particularly given the appropriately

tenacious manner in which it was defended, and assistance for plaintiff's lead counsel was

reasonable.  See Moreno, 534 F.3d at 1114 ("[T]he district court may not set the fee based on

speculation as to how other firms would have staffed the case."); Alaniz v. Robert M.

Peppercorn, M.D., Inc., No. 2:05-cv-2576-MCE-DAD, 2008 WL 5000191, at *3 (E.D. Cal. Nov.

21, 2008) ("With regard to fee challenges voiced by Defendants, the Court believes that utilizing

the services of both attorneys at trial was appropriate under the circumstances.  The Court should

not engage in speculation as to how another set of lawyers may have handled the case."); see also

Lynch v. Town of Southampton, 492 F. Supp.2d 197, 213 (E.D.N.Y. 2007) ("[I]t is not

unreasonable to have assistance in the preparation of witnesses and the handling of exhibits and

transcripts during the trial."); Cruz v. Henry Modell & Co., Inc., No. CV 05-1450(AKT), 2008

WL 905351, at *6 (E.D.N.Y. Mar. 31, 2008) ("[T]he Court finds that it was a reasonable billing

decision for trial counsel to be assisted by one associate, particularly in light of the fact that

Defendants' counsel exercised the same reasonable billing decision in being accompanied by a

second attorney throughout the trial.")[21]; National Commission for Certification of Crane

Operators v. Ventura, Civil No. 09-00104 SOM-LEK,2010 WL 2179505, at *5 (D. Hawaii Apr.

30, 2010 ("As a general rule, this Court allows two attorneys to bill for their appearances at court

/////

---

[21]  The court would note that throughout the trial of this action lead defense counsel was often, though not always, accompanied by associate counsel or a paralegal.

1  proceedings when it is reasonable and necessary for a 'second-chair' to appear with lead

2  counsel.").

3           The court finds that under the circumstances of this case, the use of "second

4  chair" counsel at trial was clearly not unreasonable, particularly in light of the $150 per hour rate

5  sought for the time of that associate counsel.  Accordingly, the challenged hours will not be

6  deducted from the fee award.

7                    5) Non-court Appearance Travel Time

8           Defendants contend that 3 hours of Mr. Katz's time attributed to the deposition of

9  Dr. Greene, defendants' retained rebuttal expert, is non-compensable because it represented

10  counsel's travel time from Sacramento to San Jose and back.  (Defs.' Opp.'n. (Doc. No. 182) at

11  8.)[22]  However, "[t]he Ninth Circuit has established that travel time and clerical tasks are

12  reasonably compensated at normal hourly rates if such is the custom in the relevant legal

13  market."  Blackwell v. Foley, 724 F. Supp.2d 1068, 1080 (N.D. Cal. 2010).  See also Nadarajah,

14  569 F.3d at 924 (finding that attorney travel time was reasonably expended and should be

15  included in plaintiff's attorney fee award); Davis v. City and County of San Francisco, 976 F.2d

16  1536, 1543 (9th Cir. 1992) (affirming the inclusion of attorneys' fees for travel time in fee

17  award), vacated on other grounds by, 984 F.2d 345 (9th Cir. 1993); Davis v. Mason County, 927

18  F.2d 1473, 1487-88 (9th Cir. 1991), superceded by statute on other grounds (affirming the lower

19  court's award of travel expenses because courts generally hold that expenses incurred during the

20  course of litigation which are normally billed to fee-paying clients should be taxed); United

21  States v. City and County of San Francisco, 748 F. Supp. 1416, 1422 (N.D. Cal. 1990)

22  ("Reasonable attorneys' fees include reasonable travel time compensated at the full hourly

23  rate.").

24  /////

25

26        [22]  This argument advanced by defendants with respect to three hours of attorney time is
     indicative of the manner in which the case was tried.  In short, every issue was contested.

1         Moreover, the court finds that in this district attorney travel time has customarily

2   been compensated at an attorney's normal hourly rate.  See Jones v. McGill, No. 1:08-CV-

3   00396-LJO-DLB, 2009 WL 1862457 at *3 (E.D. Cal. June 29, 2009) (awarding 15 hours of

4   attorney travel time for meetings with experts and witnesses as "reasonable"); Davis v. Sundance

5   Apartments, No. CIV. S-07-1922 FCD GGH, 2008 WL 3166479 at *5 (E.D. Cal. Aug. 5, 2008)

6   (awarding 6 hours of attorney travel time because it "was essential to the case, and thus,

7   reasonable."); Estate of Kligge v. Fidelity Mortg. of Cal., No. CIV F 05-1519 AWI DLB, 2008

8   WL 171031 at *3 (E.D. Cal. Jan. 18, 2008) (awarding 15.8 hours of attorney travel time);

9   Chapman v. Pier 1 Imports, Inc., No. CIV. S-04-1339 LKK/DAD, 2007 WL 2462084 at *4 (E.D.

10  Cal. Aug. 24, 2007) (awarding 18 hours of attorneys' fees attributable to travel time from

11  counsel's office in Chico to Sacramento); Cohen v. Williams, No. CIV. S-06-605 FCD/DAD,

12  2007 WL 174329, at *4 (E.D. Cal. Jan. 22, 2007) (awarding 1.5 hours of travel time from

13  attorney's office to inspection site).

14        Accordingly, the court will not deduct the three hours challenged by defendants

15  from the total attorney hours reasonably sought in plaintiff's fee application.

16               6) Otherwise Unnecessary Hours

17        Defendants also seek a reduction of 0.9 hours[23] from the total hours expended by

18  attorney Katz based on billing entries indicating that the time was for telephone conversations

19  counsel had regarding plaintiff's loans, finances and "packing house; trial strategy."  (Defs.'

20  Opp.'n. (Doc. No. 182) at 9.)  In addition, defendants also seek exclusion of another 1.8 hours

21  expended by Mr. Katz in connection with his attendance at a trial unrelated to this matter.  (Id.)

22        In reply, plaintiff clarifies that 0.8 of the 0.9 hours sought by Mr. Katz were for

23  "telephone calls regarding securing plaintiff's efforts to borrow money against his claim."  (Pl.'s

24  Reply (Doc. No. 185) at 21.)  The court finds the challenged 0.8 hours to be not reasonably

25  _____

26       [23]  See fn. 22, above.

1  related to the litigation of plaintiff's claims against defendants.  Accordingly, 0.8 will be

2  deducted from the total attorney hours attributed to Mr. Katz in awarding attorneys fees.

3         Plaintiff also clarifies in reply that the remaining 0.1 hours of telephone

4  conversation billed was related to discussion of defendants' potential trial strategy of filling the

5  courtroom with uniformed law enforcement personnel and that the 1.8 hours expended by Mr.

6  Katz attending another trial was to observe the testimony of Orlando Mayes, whom defendants

7  had identified as their use of force expert in this action.  (Id. at 21.)  Given these explanations,

8  the court finds these 1.9 hours of attorney time to have been reasonably expended.

9         C.  Lodestar

10        Applying the analysis set forth above to plaintiff's application, attorney Katz is

11 entitled to 789.9 hours at a rate of $350 per hour $276,465, attorney George Jr., is entitled to 86.7

12 hours at a rate of $250 per hour ($21,675), and attorney Danilowitz is entitled to 444.6 hours at a

13 rate of $150 per hour $66,690), for a total Lodestar of $364,830.

14        1) Adjustment

15        Defendants argue that the total amount of fees requested by plaintiff is

16 unreasonable in light of the results of obtained and that the lodestar amount in this matter must

17 therefore be adjusted downward because: (1) plaintiff achieved only limited success; (2) the court

18 should consider the ratio between the amount of damages awarded to plaintiff by the jury and the

19 amount of attorneys' fees sought; and (3) plaintiff did not achieve an otherwise "excellent

20 result." (Defs.' Opp.'n. (Doc. No. 182) at 19-23.)   At the opposite extreme, plaintiff argues that

21 there should be no downward to the lodestar figure because he prevailed on his excessive use of

22 force claim against all five defendants who proceeded to trial.

23        As observed at the outset, the lodestar figure arrived at above is presumptively

24 reasonable.  Dague, 505 U.S. at 562; Rouse, 603 F.3d at 704; Crawford, 586 F.3d at 1149.  Any

25 adjustments to the lodestar amount must be carefully tailored and based only on the limited

26 factors relevant to the reasonableness determination and only to the extent a factor has not been

subsumed within the lodestar calculation itself.[24]  Rouse, 603 F.3d at 705; Camacho, 523 F.3d at

982 (citing the factors set out in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.

1975)); Ballen, 466 F.3d at 746.  Those factors include the preclusion of other employment by

the attorney due to acceptance of the case; whether the fee is fixed or contingent, time limitations

imposed by the client or the circumstances; the amount involved and the results obtained; the

'undesirability' of the case; the nature and length of the professional relationship with the client;

and awards in similar cases.  (Id.)  Here, defendants' argument for a drastic downward

adjustment from the lodestar is based solely on their claim that plaintiff's success was extremely

limited.

It has been recognized that "attorney's fees awarded under 42 U.S.C. § 1988 must

be adjusted downward where the plaintiff has obtained limited success on his pleaded claims,

and the result does not confer a meaningful public benefit."  McCown v. City of Fontana, 565

F.3d 1097, 1103 (9th Cir. 2009) (emphasis added).  In setting fees in cases involving only partial

success by the prevailing party, federal courts have uniformly rejected tests involving strict

proportionality or simple arithmetic proration.  City of Riverside v. Rivera, 477 U.S. 561, 574-78

(1986) (rejecting a rule of proportionality based on portion of damages won); Hensley, 461 U.S.

at 435 n. 11 ("We agree with the District Court's rejection of a mathematical approach

comparing the total number of issues in the case with those actually prevailed upon.") (internal

quotation marks omitted); McCown, 565 F.3d at 1103 ("the Supreme Court has disavowed a test

---

[24]  Above, the court has already found that plaintiff's claims against the supervisorial
defendants, resolved in favor of those defendants on summary judgment, were unrelated to the
claims upon which plaintiff prevailed.  Accordingly, the court has already deducted the hours
attributable to work solely on those claims in calculating the lodestar.  Those unrelated claims
should not be considered when assessing whether an adjustment to the lodestar is appropriate.
See California State Foster parent Association v. Wagner, No. C 07-05086 WHA, 2009 WL
4823193, at *6 (N.D. Cal. Dec. 10, 2009) (factors considered in calculating the lodestar should
not be "double counted" by being considered again in determining whether to adjust the
lodestar).  Moreover, all of plaintiff's claims against the defendants who proceeded to trial were
clearly related to those upon which plaintiff prevailed because they arose out of a common core
of facts and a common course of conduct by those defendants.  See Webb, 330 F.3d at 1168-69;
Dang, 422 F.3d at 813; Thorne, 802 F.2d at 1141.

1   of strict proportionality"); McGinnis v. Kentucky Fried Chicken, 51 F.3d 805, 808-09 (9th

2   Cir.1995) (arithmetic proration "makes no practical sense").

3            Here, plaintiff initially brought more claims then those upon which he ultimately

4   succeeded at trial.  At issue is the fact that the jury did not find in his favor on his claim that the

5   five defendants subjected him to the excessive use of force in the sobriety cell, while finding in

6   his favor that all five did subject him to unconstitutional force in the safety cell, that defendant

7   Morrissey failed to adequately supervise the other deputies and that all five defendants acted

8   maliciously, oppressively or in reckless disregard of his constitutional rights.  Also to be

9   considered is that plaintiff clearly fell far short of his goal with respect to damages, being

10  awarded only $31,000 by the jury with no punitive damages despite the jury's finding that

11  opened that door.  As has been recognized, "[i]f the plaintiff obtained 'excellent results,' full

12  compensation may be appropriate, but if only 'partial or limited success' was obtained, full

13  compensation may be excessive."  Thorne, 802 F.2d at 1141 (quoting Hensley, 461 U.S. at 435.

14  See also McCown, 565 F.3d at 1104-05; Webb, 330 F.3d at 1169 ("A discretionary reduction to

15  reflect that kind of limited success is appropriate."); Schwarz v. Secretary of Health and Human

16  Services, 73 F.3d 895, 902 (9th Cir. 1995).

17           Defendants assert that because plaintiff requested that the jury award

18  $1,470,539.81 in total damages but was awarded only $31,000, plaintiff and his attorneys should

19  be found entitled to an attorney fees award of only two percent of the lodestar.  (Defs.' Opp.'n.

20  (Doc. No. 182) at 21.)  The court is entirely unpersuaded by defendants proposed two percent

21  proportionality ratio, which is blatantly inconsistent with Congress' purpose in enacting § 1988

22  and the binding legal authority cited above.  See City of Riverside v. Rivera, 477 U.S. at  578 ("A

23  rule of proportionality would make it difficult, if not impossible, for individuals with meritorious

24  civil rights claims but relatively small potential damages to obtain redress from the courts.  This

25  is totally inconsistent with Congress' purpose in enacting § 1988.")

26  /////

Moreover, the court notes that the amount of damages awarded to plaintiff for the defendants' violation of his constitutional rights in this case may well have had more to do with the jury finding plaintiff to be an unsympathetic figure who was significantly emotionally damaged prior to this incident, than with the jury's evaluation of the defendants' constitutionally prohibited conduct. Therefore, the court wholly rejects defendants' proposed two percent proportionality ratio in considering an adjustment to the lodestar.

Having rejected defendants' argument, the court must still determine whether some adjustment to the lodestar is appropriate. "At the heart of this inquiry is whether Plaintiff's accomplishments . . . justify the fee amount requested. Thomas, 410 F.3d at 649. See also Camacho, 523 F.3d at 982 (recognizing district court's discretion to adjust the presumptively reasonable lodestar figure); Forestkeeper v. U.S. Forest Service, No. CV F 09-392 LJO JLT, 2011 WL 2946176 at *8 (E.D. Cal. July 21, 2011) (There is no precise rule or formula for making these determinations. . . . The court necessarily has discretion in making this equitable judgment.") (quoting Aguirre v. Los Angeles Unified School Dist., 461 F.3d 1114, 1121 (9th Cir. 2006)).

One of the Kerr factors to be considered in this regard are awards rendered in similar cases. In Beecham, an Eastern District of California § 1983 case discussed above, the jury awarded plaintiffs $33,400 after trial on claims of the excessive use of force and false arrest. 2009 WL 3824793 at *1. In closing arguments plaintiffs' counsel had asked the jury to award $1.8 million in damages but the jury awarded the two plaintiffs a total of $33,400. (Id. at *5.) The district court applied a 50% downward adjustment to the lodestar amount in awarding attorneys' fees. (Id.) ("As discussed above, there was a large disparity in the amount of damages awarded as compared to the amount sought by Plaintiffs at trial.") In Jones, another Eastern District of California § 1983 case discussed above, the jury found in favor of the plaintiff on an excessive use of force claim only as to one of the named defendants and awarded plaintiff $9,900 in damages. 2009 WL 1862457 at *1. Plaintiff had sought a total of $15,200,000 in damages on

1  multiple claims against eight defendants.  (Id. at *5.)  The court arrived at an unadjusted lodestar

2  amount of $83,360 but adjusted plaintiff's recovery of reasonable attorney fees to $20,000.  (Id.

3  at *5) (" Mr. Jones' "victory clearly fell short of his goal; therefore, it is unreasonable to grant his

4  attorneys more than a comparable portion of the fees and costs requested.")

5          Here, although plaintiff did not prevail on the sobriety cell aspect of his excessive

6  use of force claim and fell far short of his goal with respect to the damages awarded, he

7  nonetheless achieved far more then mere monetary success.  See City of Riverside v. Rivera, 477

8  U.S. at  572; McCown, 565 F.3d at 1105 ("The Supreme Court has likewise indicated that when

9  a decision has 'served the public interest by vindicating important constitutional rights' an award

10  of attorney's fees that is disproportionate to the actual damages may be appropriate."); Morales,

11  96 F.3d at 365 ("[I]n determining a reasonable fee award . . . the district court should consider

12  not only the monetary results but also the significant nonmonetary results achieved for [plaintiff]

13  and other members of society.").  This is such a case.

14          As a result of plaintiff's lawsuit, a jury found by a preponderance of the evidence

15  that five law enforcement officers engaged in the excessive use of force in violation of plaintiff's

16  constitutional rights.  The jury also found that the conduct of each officer was malicious,

17  oppressive or in reckless disregard of plaintiff's rights.  Achieving such a verdict is no easy task

18  and obtaining the latter finding by the jury is even more difficult.  Moreover, such verdicts are

19  significant in that they represent a determination by citizens of this district that the defendant law

20  enforcement officers' conduct in this instance was prohibited by the U.S. Constitution.  The court

21  trusts that the defendants', and those in their Department, will take heed of the verdict and adjust

22  their future conduct accordingly.  In this regard, plaintiff's successful lawsuit achieved a

23  significant nonmonetary result "because successful suits act as a deterrent to law enforcement

24  and serve the public purpose of helping to protect the plaintiff and persons like him from being

25  subjected to similar unlawful treatment in the future."  Mendez v. County of San Bernardino, 540

26  F.3d 1109, 1128 (9th Cir. 2008) (internal quotation and citation omitted).  See also Guy v. City

1    of San Diego, 608 F.3d 582, 589 (9th Cir. 2010) ("[W]e conclude that a fee award serves a

2    purpose beneficial to society by encouraging the City of San Diego to ensure that all of its police

3    officers are well trained to avoid the use of excessive force, even when they confront a person

4    whose conduct has generated the need for police assistance.").

5             Of course, the degree of success achieved by plaintiff and awards in similar cases

6    are but two of the relevant factors noted above in considering a lodestar adjustment.  Considering

7    those two factors along with the others (including the "desirability of the case," its contingent fee

8    nature and the few attorneys willing to take on such cases), the court concludes that a **25%**

9    downward adjustment to the lodestar is appropriate.  This conclusion results in an adjusted

10   lodestar of $273,622.50 for plaintiff's attorney fees expended through trial.

11   II.  Post-Judgment Interest

12            Plaintiff also seeks post-judgment interest in connection with the attorneys' fees

13   and expenses awarded, asserting that post-judgment interest should have begun running as of the

14   date that judgment was entered in plaintiff's favor, March 10, 2011.  (Pl.'s Mot. for Fees (Doc.

15   No. 169) at 22.)

16            A party may recover interest on attorneys' fees awarded under 42 U.S.C. § 1988.

17   Spain v. Mountanos, 690 F.2d 742, 748 (9th Cir. 1982) (discussing 28 U.S.C. § 1961).  "Interest

18   runs from the date that entitlement to fees is secured, rather than from the date that the exact

19   quantity of the fees is set."  Friend v. Kolodzieczak, 72 F.3d 1386, 1391-92 (9th Cir. 1995)

20   (awarding interest from the date the initial fee award order was entered).  In this regard, "an

21   award of fees begins accruing interest on the date of the initial order establishing an entitlement

22   to them."  Cruz ex rel. Cruz v. Alhambra School Dist., 601 F. Supp.2d 1183, 1198 (C.D. Cal.

23   2009).

24            Accordingly, interest will begin accruing on plaintiff's award of fees on the date

25   of this order and not from March 10, 2011.

26   /////

1   III.  Attorney Expenses

2          Plaintiff also seeks an award compensating him for litigation expenses incurred in

3   litigating the merits of this case in the total amount of $34,138.12.  (Pl.'s Mot. for Fees (Doc. No.

4   169) at 23.)  Included in this requested amount is $27,733.65 for fees relating to plaintiff's expert

5   witnesses.  Defendants argue that expert witness fees are not recoverable under § 1988 and that

6   plaintiff should be awarded only $6,404.47 in expenses after the $27,733.65 in expert witness

7   fees are deducted.  (Defs.' Opp.'n. (Doc. No. 182) at 24.)

8          "Under § 1988, the prevailing party 'may recover as part of the award of

9   attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying

10   client.'"  Dang, 422 F.3d at 814 (quoting Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994)).

11   "Such out-of-pocket expenses are recoverable when reasonable."  Dang, 422 F.3d at 814.

12   However, a plaintiff may not recover expert witness fees pursuant to § 1988.  See West Virginia

13   Univ. Hosp. v. Casey, 499 U.S. 83, 102 (1991) (§ 1988 does not authorize shifting of expert

14   witness fees to the losing party); Ruff v. County of Kings, 700 F. Supp.2d 1225, 1243 (E.D. Cal.

15   2010) (noting that the Supreme Court has held that § 1988 does not allow for the recovery of

16   expert witness fees and subsequent Congressional action does not change that holding with

17   respect to § 1983 litigation); Agster v. Maricopa County, 486 F. Supp.2d 1005, 1019 (D. Ariz.

18   2007) (because Congress did not amend § 1988 to include § 1983 cases, the Casey decision

19   stands with regard to § 1983 cases).

20          Accordingly, the $27,733.65 plaintiff has requested in connection with expert

21   witness fees will be denied.  Plaintiff will instead be awarded $6,404.47 in expenses.

22   IV.  Opposing Defendants Renewed Motion for Judgment as a Matter of Law

23          Plaintiff seeks compensation for time spent opposing defendants' renewed motion

24   for judgment as a matter of law.  (Pl.'s Reply (Doc. No. 185) at 30.)  In this regard, plaintiff

25   seeks 34.8 hours (at a rate of $350 per hour) for services rendered by attorney Katz and 44.7

26   hours (at a rate of $150 per hour) for the services of attorney Danilowitz.  (Id. at 31.)

1    As the prevailing party in this lawsuit, plaintiff will be awarded attorneys' fees

2  incurred opposing defendants renewed motion for judgment as a matter of law. See Lambert v.

3  Ackerley, 180 F.3d 997, 1012-13 (9th Cir. 1999) (affirming award of attorney fees on portion of

4  post-trial motion upon which party prevailed); Beecham, 2009 WL 3824793 at *3 (awarding fees

5  to prevailing party in connection with their opposition to defendants' post trial motions).

6  Plaintiff's opposition to defendant's post-trial motion was obviously necessary and entirely

7  successful. See Brandon E. v. Dep't of Educ., No. CV 07-00536 ACK-LEK, 2008 WL 4602533

8  at *8 (D. Haw. Oct.16, 2008) (finding that even attorney time spent on unsuccessful Rule 11

9  sanctions motion by the party that ultimately prevailed in the litigation was reasonably necessary

10  to achieve the result obtained and was compensable).  Finally, the court finds the amount of

11  attorney hours requested by plaintiff in opposing the defendants' motion is reasonable in light of

12  the extensive nature of the motion.

13    Accordingly, plaintiff will be awarded attorneys' fees in the amount of $18,855.00

14  for time spent opposing defendants' renewed motion for judgment as a matter of law.

15  V.  Fee Motion

16    Plaintiff also seeks compensation for time spent on plaintiff's attorneys' fee

17  motion.  Specifically, plaintiff seeks 21.4 hours for the services rendered by attorney Katz and

18  54.2 hours for the services of attorney Danilowitz in preparing the attorneys' fees motion itself.

19  (Pl.'s Mot. for Fees (Doc. No. 169) at 23-24); (Pl.'s Reply (Doc. No. 185) at 30.)  In addition,

20  plaintiff seeks compensation for 41.3 hours by attorney Katz and 36.1 hours by attorney

21  Danilowitz for preparing the reply to defendants' opposition to the attorneys' fees motion.

22    A plaintiff may seek reasonable attorneys' fees for time spent obtaining those fees.

23  See Camacho, 523 F.3d at 981; Anderson v. Director, Office of Workers Compensation

24  Programs, 91 F.3d 1322, 1325 (9th Cir. 1996); Bernardi v. Yeutter, 951 F.2d 971, 976 (9th Cir.

25  1991).  "Such compensation must be included in calculating a reasonable fee because

26  uncompensated time spent on petitioning for a fee automatically diminishes the value of the fee

1  eventually received." <u>Anderson</u>, 91 F.3d at 1325. "However, a request for attorney's fees should

2  not result in a second major litigation[.]" <u>Camacho</u>, 523 F.3d at 981.

3       Here, plaintiff's attorneys claim to have spent 153 hours on their motion for

4  attorneys' fees and the reply, for a total cost of $35,490, (62.7 hours x $350 per hour for Mr. Katz

5  and 90.3 hours x $150 for Mr. Danilowitz). Despite the aggressive nature and length of

6  defendants' opposition to the motion, the court finds plaintiff's application in this regard to be

7  for an excessive number of hours, especially considering Mr. Katz's considerable experience in

8  this area and the quality of the briefing submitted to the court.

9       Accordingly, the court will award plaintiff one-half of the requested attorneys'

10 fees in connection with the fee motion, thus adding $17,745 to the fee award. <u>See</u> <u>Thompson v.</u>

11 <u>Gomez</u>, 45 F.3d 1365, 1368 (9th Cir. 1995) (affirming percentage reduction to fees-on-fees

12 award); <u>Hemmings v. Tidyman's Inc.</u>, 285 F.3d 1174, 1199-1200 (9th Cir. 2002) (explaining that

13 fees incurred in conjunction with the preparation of a fee application can be reduced when the

14 district court concludes that such fees were not reasonably incurred); <u>Beecham</u>, 2009 WL

15 3824793 at *6 (Reducing attorneys' fees in connection with fee motion by 50% because

16 plaintiff's attorneys "have previously filed numerous motions for attorneys' fees and therefore,

17 should have been able to prepare this motion in about half the time." )

18                              CONCLUSION

19       Accordingly, IT IS HEREBY ORDERED that:

20       1.  Plaintiff's April 6, 2011 motion for attorneys' fees (Doc. No. 168) is granted in

21 part as set forth in detail below;

22       2.  Plaintiff is awarded $273,622.50 in attorneys' fees for litigation and trial;

23       3.  Plaintiff is awarded $6,404.47 in expenses;

24       4.  Plaintiff is awarded $18,855.00 in attorneys' fees for opposing defendants'

25 renewed motion for judgment as a matter of law; and

26 /////

1          5.  Plaintiff is awarded $17,745.00 in attorneys' fees in connection with the

2   plaintiff's attorneys' fees motion.[25]

3   DATED: August 12, 2011.

4

5   _____

6   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

7   DAD:6
    orders.consent/jones1025.o3.fees

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   _____
        [25]  These amounts result in a total award of $316,626.97 in attorneys' fees and expenses
26   to plaintiff.